# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA, *ex rel* Michael Durkin,

                                        Plaintiff,

v.

COUNTY OF SAN DIEGO,

                                        Defendant.

Case No.:  15cv2674-MMA (WVG)

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

[Doc. No. 20]

Plaintiff Michael Durkin filed this action under the *qui tam* provisions of the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, on behalf of the United States of America and against Defendant County of San Diego. *See* Doc. Nos. 1, 17. The United States declined to intervene in this action. *See* Doc. No. 7. Defendant now moves to dismiss the First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. *See* Doc. No. 20. The Court found the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1. For the reasons set forth below, the Court **GRANTS** Defendant's motion.

By way of background, Plaintiff[2] alleges that in 2014, he was involved in a lawsuit in which the owners of two properties located near the McClellan-Palomar Airport sued the County of San Diego for inverse condemnation. The FAC states that Plaintiff was the manager of the two entities that owned those properties. In the course of that litigation, Plaintiff alleges he uncovered the information underlying this action. In the instant case, Plaintiff asserts twelve claims against Defendant County of San Diego under the FCA, and requests damages and civil penalties. Plaintiff alleges Defendant made false statements to the Federal Aviation Administration ("FAA") in applying for grants for the maintenance and development of the Palomar-McClellan Airport located in Carlsbad, County of San Diego, California.

Plaintiff alleges the FAA makes funding "available to improve American airports," and provides funds to recipients in order to "among other things, ensure the safety of airports, the surrounding areas, and the people in or around the airports." *See* Doc. No. 17, FAC, ¶ 9. In order to obtain federal funds through the FAA, Plaintiff alleges applicants must "make statements and promises, and give assurances regarding, inter alia, how the land surrounding the airport is being controlled by the applicant so as to protect airport operations from hazards on the ground, and people and property on the ground from hazards inherent to airport operations." *See* FAC, ¶ 9. Further, the FAC states that "[u]pon approving a grant, the FAA requires the applicant to include in the grant agreement [similar] statements . . . regarding how the airport and surrounding areas will be operated, maintained, improved, or acquired" for safety purposes. *See* FAC, ¶ 10. Then, Plaintiff alleges, "a grantee is required to file claims for payment to the FAA in the form of invoices," which "impliedly or expressly recertify all the promises, assurances,

---

[1] Because this matter is before the Court on a motion to dismiss, the Court must accept as true the allegations set forth in the complaint. *See Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 740 (1976).

[2] For convenience, "Plaintiff" hereinafter refers to *Qui Tam* Plaintiff Durkin, as opposed to the United States.

and statements previously made in the grant applications and agreements." *See* FAC, ¶ 11.

In particular, Plaintiff alleges Defendant applied for, was approved for, and obtained funding for use in relation to the McClellan-Palomar Airport. Plaintiff contends that, in 1995, Defendant knew that certain undeveloped properties were in the Runway Protection Zone ("RPZ"), and obtained federal funds from the FAA in order to acquire those properties. Plaintiff alleges that instead of clearing the RPZ, Defendant "decided the properties were too expensive, gave other projects priority, and reallocated the funds." *See* FAC, ¶ 14. The FAC asserts that the County knew that it was required under "federal regulations" to "acquire sufficient interest in the RPZ to prevent incompatible land uses." *See* FAC, ¶ 14. Plaintiff alleges Defendant never did so, "resulting in the development of an office building in the RPZ," which "constitutes a place of public assembly in violation of FAA standards, circulars and requirements which the County promised it would comply with." *See* FAC, ¶ 14. Plaintiff alleges this safety hazard continues to the present time, despite Defendant's assertions otherwise in its grant applications.

Specifically, Plaintiff alleges Defendant, on multiple occasions between 2005 and 2015, made misrepresentations to the FAA in applying for, entering into agreements for, or making claims for federal funds. Plaintiff alleges that, in each grant application, "the County certified, represented, and assured that it would be guided in the acquisition of real property by 49 CFR Part 24, subpart B, and that it had complied and would comply with Advisory Circular[3] 150/5300-13, Changes 1 through 5." *See* FAC, ¶¶ 19, 31, 53, 65, 77, 89, 100, 111, 122, 134, 146, 158. Also, Plaintiff alleges that in some of the applications, Defendant stated that "it had taken the step of causing the adoption of the 'Palomar Airport Comprehensive Land Use Plan.'" *See* FAC, ¶¶ 19, 65, 77, 89, 134,

---

[3] According to the record, an "Advisory Circular" is a document issued by the United States Department of Transportation, Federal Aviation Administration, delineating guidelines and standards pertaining to aviation. *See, e.g.*, Doc. No. 20, Exh. 31.

146, 158. Moreover, in some grant agreements, Plaintiff alleges Defendant promised "to acquire an interest in Runway Protection Zone Properties not then under it's [sic] control, and to use interest acquired to prevent erection or creation of places of public assembly, meaning office and industrial buildings, and to clear or discontinue any such uses as already existed." *See* FAC, ¶¶ 23, 35, 57, 126. In those same agreements, Plaintiff alleges Defendant promised to "abide by the Uniform Relocation Assistance and Real Property Acquisition Policies Act, 42 U.S.C. 4601, et seq." *See* FAC, ¶¶ 23, 35, 57, 126. In all cases, Plaintiff contends that Defendant's assertions were false, and were made in order to induce the FAA to grant it funds, and that Defendant "never intended to perform" on its promises, and "took no steps whatsoever to perform its' promises and assurances." *See* FAC, ¶¶ 27, 39, 49, 60, 72, 84, 96, 107, 118, 129, 141, 153, 165.

<u>LEGAL STANDARD</u>

**A.    Federal Rules of Civil Procedure 8 and 12(b)(6)**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard thus demands more than "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). Instead, the complaint "must contain allegations of underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The court need not take legal conclusions as true merely because they are cast in the form

of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

In determining the propriety of a Rule 12(b)(6) dismissal, courts generally may not look beyond the complaint for additional facts. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.*; *see also* Fed. R. Evid. 201; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) *overruled on other grounds by Galbraith v. Cnty. Of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002).

Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

**B.    Federal Rule of Civil Procedure 9(b)[4]**

Under Rule 9(b), when the complaint includes allegations of fraud, a party must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "In other words, the complaint must set forth what is false or misleading about a statement, and why it is false." *Rubke v. Capitol Bancorp Ltd*, 551 F.3d 1156, 1161 (9th Cir. 2009) (internal quotation marks omitted). The plaintiff's allegations of fraud must be "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Further, the plaintiff must describe "the who, what, when, where, and how" of the fraudulent misconduct charged. *Id.* at 1106–07. In other words, the plaintiff must specify the time, place, and content of the alleged fraudulent or mistaken misconduct. *See id.* However, "malice, intent,

_____

[4] Both parties acknowledge that Rule 9(b)'s heightened pleading standard applies to Plaintiff's claims.

knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Failure to satisfy this heightened pleading requirement can result in dismissal of the claims. *Vess*, 317 F.3d at 1107.

### DISCUSSION

## A. Requests for Judicial Notice and Incorporation by Reference

As an initial matter, both parties request the Court incorporate by reference some documents into the FAC, as well as request judicial notice of certain documents or facts. In deciding a motion to dismiss under Rule 12(b)(6), a court is generally limited to the four corners of the complaint. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). However, a court may consider "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice." *Id.*; *see also Lee*, 250 F.3d at 688. The Court addresses the propriety of those requests below.

### i. Incorporation by Reference

Defendant requests the Court consider multiple documents as incorporated by reference in the FAC. A document "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Ritchie*, 342 F.3d at 908 (internal citations omitted). In other words, "[a] court may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint necessarily relies on the document and its authenticity is unquestioned." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), superseded by statute on other grounds in *Abrego v. Dow Chem. Co.*, 443 F.3d 676 (9th Cir. 2006); *Swartz v. KPMG LLP,* 476 F.3d 756, 763 (9th Cir. 2007); *Kneivel v. ESPN*, 393 F.3d 1068, 1077 (9th Cir. 2005).

Here, Defendant specifically requests the Court incorporate by reference copies of multiple grant applications and grant agreements underlying Plaintiff's claims, Airport Sponsor Assurances forms, the Federal Aviation Administration Advisory Circular referenced in the FAC, as well as copies of "Outlay Reports and Requests for Reimbursement for Construction Programs" and "Echo Payment Drawdowns." *See* Doc.

No. 20, Exhs. 1–39. Plaintiff does not oppose this request nor dispute the authenticity of the documents, and Defendant is correct that Plaintiff's claims necessarily rely on these documents and some statements included therein. In fact, Plaintiff cites to and relies on Defendant's submissions—particularly the grant applications and agreements which include the contested statements—in Plaintiff's opposition brief. Thus, the Court **GRANTS** Defendant's requests.

Plaintiff also requests incorporation by reference of several documents. Plaintiff submits a copy of a grant application and grant agreement from 1995 "and attached documents," as well as copies of a March 28, 1996 letter to the FAA from the County of San Diego "with attachments." *See* Doc. No. 23, Exhs. 1, 2. However, unlike the documents that Defendant provides for incorporation, the FAC appears to merely mention the contents of those documents. The FAC does not refer "extensively to the document[s]" nor do the documents "form the basis" of any of Plaintiff's claims. *See Ritchie*, 342 F.3d at 908. Thus, the Court **DENIES** Plaintiff's request. Despite that the Court declines to incorporate Plaintiff's documents, Plaintiff will have the opportunity to amend the FAC, as discussed below, and may add allegations relating to these documents, or incorporate these documents into an amended pleading if he so wishes.

### ii. Judicial Notice

Both parties also request judicial notice of several matters. A court may take judicial notice of matters submitted as part of a complaint, or those that are not but whose authenticity is not contested and where the plaintiff's complaint relies on them. *Lee*, 250 F.3d at 688 (9th Cir. 2001). However, "judicial notice is inappropriate where the facts to be noticed are not relevant to the disposition of the issues before the court." *Kuzmenko v. Lynch*, 606 F. App'x 399 (9th Cir. 2015) (citing *Ruiz v. City of Santa Maria*, 160 F.3d 543, 548 n.13 (9th Cir. 1998)).

Defendant requests judicial notice of certain allegations that Plaintiff made in a previous case, as well as portions of the FAA Airport Compliance Manual. However, these allegations are not relevant to the issues pending before the Court. The Court

accordingly **DENIES** Defendant's request.

In addition, Defendant requests judicial notice of the following fact: "Relator Michael Durkin manages, is a member of, and has an ownership interest in, 'Durkin CAC, Lot 24 LLC' which is the plaintiff that sued County of San Diego for inverse condemnation of that limited liability company's office building located within the runway protection zone of McClellan Palomar Airport." *See* Doc. No. 22. However, again, Plaintiff's prior litigation has no relevance to the Court's disposition of Defendant's current motion to dismiss. Thus, the Court **DENIES** Defendant's request.

Turning to Plaintiff's requests, Plaintiff moves for judicial notice of Federal Aviation Advisory Circular 150/5300-13A, updated as of February 2014. However, it is unclear why Defendant's copy of Circular 150/5300 is insufficient for the Court's purposes, particularly where Plaintiff does not oppose its incorporation by reference or provide any reasoning in support of his request for judicial notice of this copy. Absent any reasoning as to why the Court should take judicial notice of this version, the Court **DENIES** Plaintiff's request.

Plaintiff also requests judicial notice of the following: an FAA publication entitled "What is AIP?," a law review article regarding implied certification claims under the FCA, a congressional record, a document regarding fraud statistics, a document entitled Airport Layout Plan, the Merriam-Webster dictionary definition of "assure," and FAA Advisory Circular 15/5100-17. However, it is unclear for what purposes Plaintiff wishes the Court to take judicial notice of these documents, which span more than 500 pages. Accordingly, because the Court need not take judicial notice of these matters for the purposes of the motion to dismiss, the Court **DENIES** Plaintiff's requests.

**B.    Motion to Dismiss**

Defendant moves to dismiss Plaintiff's claims on various grounds. First, Defendant argues Plaintiff does not allege a single objectively false statement that could serve as the basis for a FCA claim. Second, Defendant argues many of Plaintiff's causes of action are barred by the statute of limitations. Third, Defendant argues none of

Plaintiff's claims are pleaded with the specificity required by Federal Rules of Civil Procedure 8 and 9.  Plaintiff opposes dismissal of any claims.  Also, the United States has filed a statement of interest in response to the County's motion to dismiss, despite that the United States has declined to intervene in this action.  The United States requests only that if the Court decides to dismiss any claims in response to the County's motion, the Court dismiss such claims without prejudice as to the United States.  Otherwise, the United States asserts that it takes no position as to the merits of the pending motion to dismiss.  For the reasons set forth below, the Court **GRANTS** Defendant's motion to dismiss.

### i.   The False Claims Act

"The False Claims Act makes liable anyone who 'knowingly presents, or causes to be presented, a false or fraudulent claim for [government] payment or approval,' or 'knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim'" for government payment.  *See United States ex rel. Campie v. Gilead Scis., Inc.*, --- F.3d ----, No. 15-16380, 2017 WL 2884047, at *4 (9th Cir. July 7, 2017) (quoting 31 U.S.C. § 3729(a)(1)(A), (B)).  While, "[i]n an archetypal *qui tam* False Claims action, such as where a private company overcharges under a government contract, the claim for payment is itself literally false or fraudulent," liability under the FCA "is not limited to such facially false or fraudulent claims for payment."  *U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1170 (9th Cir. 2006).  Rather, "the scope of false or fraudulent claims should be broadly construed."  *Id.*  Relevant here, "[t]he principles embodied in this broad construction of a 'false or fraudulent claim' have given rise to two doctrines that attach potential False Claims Act liability to claims for payment that are not explicitly and/or independently false: (1) false certification (either express or implied); and (2) promissory fraud."  *Id.* at 1171.

In false certification cases, "parties avail themselves of benefits of some type, such as loan guarantees or agricultural supports, through false statements which create eligibility that otherwise would not exist."  *See U.S. ex rel. Hopper v. Anton*, 91 F.3d

1261, 1266 (9th Cir. 1996) (John T. Boese, *Civil False Claims and Qui Tam Actions* 1–29 to 1–30 (1995)).  Mere regulatory violations do not create liability.  *Id.*  Rather, "[i]t is the false *certification* of compliance which creates liability when certification is a prerequisite to obtaining a government benefit."  *Id.*  Similarly, under an implied false certification theory, "when a defendant submits a claim, it impliedly certifies compliance with all conditions of payment," and "if the claim fails to disclose the defendant's violation of a material statutory, regulatory, or contractual requirement . . . the defendant has made a misrepresentation that renders the claim 'false or fraudulent' under § 3729(a)(1)(A)."  *Campie*, 2017 WL 2884047, at *6.

The theory of promissory fraud is closely related to false certification, and dictates "that liability will attach to each claim submitted to the government under a contract, when the contract or extension of government benefit was originally obtained through false statements or fraudulent conduct."  *Hendow*, 461 F.3d at 1173.  Promissory fraud "sometimes differs from the false certification theory only in a temporal sense."  *U.S. ex rel. New Mexico v. Deming Hosp. Corp.*, 992 F. Supp. 2d 1137, 1154 (D.N.M. 2013).  For example, "[w]hile the false certification theory alleges that a contractor certified that it *did* comply with a statute, regulation, or contractual term when it knew at the time that it did not do so, the promissory fraud theory may allege that a contractor originally certified that it *would* comply with a law, regulation, or term when it knew at the time that it would not do so."  *Id.*

Under either a false certification or promissory fraud theory, "the essential elements of False Claims Act liability remain the same: (1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due."  *Hendow*, 461 F.3d at 1174.  In considering a claim of false certification, there are "two major considerations: '(1) whether the false statement is the cause of the Government's providing the benefit; and (2) whether any relation exists between the subject matter of the false statement and the event triggering Government's [sic] loss.'"  *Id.* at 1171 (quoting *Hopper*, 91 F.3d at

1266).  Under either theory, a false claim or promise must be the "sine qua non of receipt

of state funding."  *See Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th

Cir. 2010).  Further, "for promissory fraud to be actionable under the False Claims Act,

'the promise must be false when made.'"  *Hendow*, 461 F.3d at 1174.  "Innocent

mistakes, mere negligent misrepresentations and differences in interpretations are not

false certifications under the Act."  *Hopper*, 91 F.3d at 1267.

### ii.  Defendant's Statements

Although the FAC does not quote any statements from the grant applications or

grant agreements that give rise to Plaintiff's claims, Defendant provides copies of the

grant applications and agreements, which are incorporated by reference into the FAC.

Plaintiff does not oppose their incorporation, and relies on the quoted statements in

opposing Defendant's motion to dismiss.  Accordingly, in analyzing the propriety of

Defendant's motion to dismiss, the Court relies on the specific statements that the parties

discuss in their briefing, as opposed to the broad summaries in the FAC.

Here, Plaintiff's claims arise out of multiple allegedly false statements.  First,

several grant agreements include the following assurance, or one essentially identical:

> **RUNWAY PROTECTION ZONES**: The Sponsor agrees to
> take the following actions to maintain and/or acquire a property
> interest satisfactory to the FAA, in the Runway Protection
> Zones:
> **i. Existing Fee Title Interest in the Runway Protection
> Zone**: The Sponsor agrees to prevent the erection or creation of
> any structure or place of public assembly in the Runway
> Protection Zone, except for NAVAIDS that are fixed by their
> functional purposes or any other structure approved by the
> FAA. Any existing structures or uses within the Runway
> Protection Zone will be cleared or discontinued unless
> approved by the FAA.
> **ii. Existing Easement Interest in the Runway Protection
> Zone**: The Sponsor agrees to take any and all steps necessary to
> ensure that the owner of the land within the designated Runway
> Protection Zone will not build *any* structure in the Runway

Protection Zone that is a hazard to air navigation or which might create glare or misleading lights or lead to the construction of residences, fuel handling and storage facilities, smoke generating activities, or places of public assembly, such as churches, schools, office buildings, shopping centers, and stadiums.

**iii. Future Interest in the Runway Protection Zone**: The Sponsor agrees that it will acquire fee title or less-than-fee interest in the Runway Protection Zones for runways that presently are not under its control within 10[5] years of this Grant Agreement. Said interest shall provide the protection noted in above Subparagraphs a and b [sic].

*See* Doc. No. 23; *see also, e.g.*, Doc. No. 20, Exh. 8, ¶ 11.

Second, the parties discuss how, in response to the portion of grant applications requiring applicants to state what actions have been taken to "assure compatible usage of land adjacent to or in the vicinity of the airport," the County representative responded "Palomar Airport Comprehensive Land Use Plan." *See* Doc. Nos. 20, 23; *see also, e.g.*, Doc. No. 20, Exh. 1.

Third, Plaintiff alleges "every grant agreement" included, in pertinent part, statements identical or substantially identical to the following:

**21. Compatible Land Use**. It will take appropriate action, to the extent reasonable, including the adoption of zoning laws, to restrict the use of land adjacent to or in the immediate vicinity of the airport to activities and purposes compatible with normal airport operations, including landing and takeoff of aircraft.

**34. Policies, Standards, and Specifications**. It will carry out the project in accordance with policies, standards, and specifications approved by the Secretary including but not limited to the advisory circulars listed in the Current FAA Advisory Circulars for AIP[6] projects . . . and in accordance with applicable state policies, standards, and specifications approved

---

[5] Some grant agreements provide for twenty years, as opposed to ten.
[6] AIP refers to "Airport Improvement Program." *See* Doc. No. 20, Exh. 31.

by the Secretary.

*See* Doc. No. 23; *see also, e.g.*, Doc. No. 20, Exh. 8, ¶ 11.

Fourth, in light of paragraph 34's reference to advisory circulars, Plaintiff's opposition also cites to paragraph 212 of FAA Circular 150/5300, which states, in pertinent part:

> **212. RUNWAY PROTECTION ZONE (RPZ)**. The RPZ's function is to enhance the protection of people and property on the ground. This is achieved through airport owner control over RPZs. Such control includes clearing RPZ areas (and maintaining them clear) of incompatible objects and activities. Control is preferably exercised through the acquisition of sufficient property interest in the RPZ.
>
> . . .
>
> (b) Land uses prohibited from the RPZ are residences and places of public assembly. (Churches, schools, hospitals, office buildings, shopping centers, and other uses with similar concentrations of persons typify places of public assembly.) Fuel storage facilities may not be located in the RPZ.
>
> . . .
>
> **b. Recommendations**. Where it is determined to be impracticable for the airport owner to acquire and plan the land uses within the entire RPZ, the RPZ land use standards have recommendation status for that portion of the RPZ not controlled by the airport owner.

*See* Doc. No. 23; Doc. No. 20, Exh. 31, p. 331.

Fifth, the FAC alleges "the County certified, represented, and assured that it would be guided in the acquisition of real property by 49 CFR Part 24, subpart B, and that it had complied and would comply with Advisory Circular 150/5300-13, Changes 1 through 5." *See* FAC, ¶¶ 19, 31, 53, 65, 77, 89, 100, 111, 122, 134, 146, 158. Defendant interprets Plaintiff's allegations as referring to paragraph 35 of several of the grant agreements, which states:

**35. Relocation and Real Property Acquisition.** (1) It will be guided in acquiring real property, to the greatest extent practicable under State law, by the land acquisition policies in Subpart B of 49 CFR Part 24 and will pay or reimburse property owners for necessary expenses as specified in Subpart B.

Doc. No. 20, Exh. 27.

Sixth, and finally,[7] Plaintiff alleges Defendant promised compliance with the Uniform Relocation Assistance and Real property Acquisition Policies Act. *See* FAC, ¶¶ 23, 35, 57, 126.

Having laid out the particular statements underlying Plaintiff's claims, the Court addresses Defendant's arguments in support of its motion to dismiss in turn below.

### iii.    Objective Falsity

Defendant urges the Court that Plaintiff's claims fail as a matter of law because Defendant did not make any "objectively false" statements. *See* Doc. No. 20. Regarding the first statement, as quoted above, Defendant argues it cannot give rise to an FCA claim because it is qualified by a statement which is not objectively false—"satisfactory to the FAA." *See* Doc. No. 20. However, Plaintiff argues Defendant "never intended to acquire *any* interest, or do anything whatsoever to comply with" those provisions. *See* Doc. No. 23. Further, Defendant's argument appears to be at odds with the structure and language of the assurance. Without deciding as a matter of law what was required under the provisions, it appears to the Court that the provisions required sponsors to comply with the subsections *in order to* "maintain and/or acquire a property interest satisfactory to the FAA." *See* Doc. No. 20. Under Defendant's interpretation, the subsections would

---

[7] In Plaintiff's opposition, Plaintiff also argues Defendant stated it would comply with FAA Circular 150/5100-17 and thus the Uniform Relocation Assistance and Real Property Acquisition Policies Act, which Plaintiff states required Defendant to acquire an easement in order to restrict land use in the RPZ. However, the Court disregards this argument because the FAC does not mention Circular 150/5100 nor allege that any of Defendant's statements were false based on Defendant's failure to obtain an easement. Accordingly, the FAC did not provide Defendant notice, as required under basic pleading standards, of this basis for Plaintiff's claims. *See* Fed. R. Civ. P. 8.

be rendered either permissive, despite that the language indicates that they are mandatory requirements, or superfluous. Sponsors would be left guessing what actions would be "satisfactory to the FAA." *See* Doc. No. 20. For those reasons, the Court is unconvinced that one could never falsely promise compliance with those provisions.

With respect to the second statement delineated above, Defendant argues its response—"Palomar Airport Comprehensive Land Use Plan"—cannot give rise to FCA liability because that plan "is the controlling document addressing compatible land use in the vicinity of the airport." *See* Doc. No. 20. Also, Defendant contends it has no authority over land use within the City of Carlsbad, which surrounds the airport. Thus, Defendant argues its response cannot be objectively false because the Plan does assure compatible land use "subject to the actions of the City of Carlsbad." *See* Doc. No. 20. However, "at this stage, a court does not make factual findings," and accordingly, the Court declines to determine as a matter of law the scope of Defendant's authority over land use. *See Browne v. McCain*, 612 F. Supp. 2d 1125, 1130 (C.D. Cal. 2009). In the opposition brief, Plaintiff argues that in providing the responses, Defendant assured or promised to make sure that land use surrounding the airport was free from incompatible land uses, *i.e.*, office buildings. Plaintiff contends Defendant never intended to do so, though. *See* Doc. No. 23. Based on Plaintiff's argument, the Court is unpersuaded that Defendant's statement cannot, under any circumstances, be false.[8]

Regarding the third allegedly false statement, listed as paragraph 21 above, Defendant argues that because it only agreed to take "appropriate action, to the extent reasonable . . . to restrict the use of land" in the RPZ, Defendant cannot be liable under the FCA. Defendant argues that, as an initial matter, that provision did not require Defendant to prevent or remove office buildings. Defendant points the Court to the FAA Airport Compliance Manual, arguing that pursuant to the manual, where an airport

---

[8] However, as discussed below, the FAC itself does not allege Defendant's statement was false for this reason, and thus, Plaintiff fails to sufficiently plead falsity with the specificity required under Rule 9(b).

operator such as Defendant does not have zoning authority over adjacent property, the operator need only "demonstrate a reasonable attempt to inform surrounding municipalities on the need for land use compatibility zoning." *See* Doc. No. 20. However, as discussed above, the Court declines to take judicial notice of the Compliance Manual, and it is premature to decide issues of fact at this stage in the proceedings.

Further, Defendant argues one cannot objectively prove the falsity of a promise to take "appropriate actions to the extent reasonably possible." *See* Doc. No. 20. Defendant argues it would be "impossible" for the County to "adopt zoning laws affecting properties in Carlsbad," where the subject office building is located. *See* Doc. No. 20. However, again, the Court does not make factual findings in determining the propriety of a Rule 12(b)(6) motion to dismiss, and, accordingly, declines to rely on Defendant's argument that it cannot adopt such zoning laws.

Also, Plaintiff argues Defendant made a false statement in making the promise in paragraph 21 because Defendant never intended to do anything to fulfill that promise. In such circumstances, the assurance could be deemed false or fraudulent under a promissory fraud theory of liability, and the Court declines to categorically exclude the assurance from FCA liability. *See Hendow*, 461 F.3d at 1174 (stating that "failure to honor one's promise is (just) breach of contract, but making a promise that one *intends* not to keep is fraud").

Fourth, Defendant argues that in light of paragraph 212(b) of FAA Circular 150/5300, Defendant was not required to prevent or eliminate the allegedly incompatible office building. In particular, paragraph 212(b) states that "[w]here it is determined to be impracticable for the airport owner to acquire and plan the land uses within the entire RPZ, the RPZ land use standards have recommendation status for that portion of the RPZ not controlled by the airport owner." *See* Doc. No. 23; Doc. No. 20, Exh. 31, p. 331. Defendant contends, "[t]herefore, because the City of Carlsbad has land use jurisdiction over those RPZ properties, and because acquiring all properties has significant financial

requirements, it was and is impracticable for the County to acquire and plan all land uses in the RPZ." *See* Doc. No. 20.  Accordingly, Defendant concludes that its promise to comply with the Circular was not false or fraudulent.  Plaintiff counters that Defendant could have acquired a property interest through eminent domain, and also that it is the false promise to comply, while having no intent to do so, that made Defendants' statements fraudulent.  As discussed, the Court declines to make findings of fact at this stage.  Even were it appropriate for the Court to determine the scope of Defendant's authority over land within the RPZ at this stage, or the impracticability of Defendant acquiring and planning land use, the record is insufficient for the Court to make such determinations.

Additionally, Defendant argues impracticability is subject to many variables and different interpretations, and accordingly, a promise to comply with paragraph 212 cannot be objectively false.  However, the Court is unpersuaded that there are no circumstances under which an empty promise of compliance with the Circular could be deemed false or fraudulent under a promissory fraud theory of liability.  For the above reasons, the Court is unpersuaded by Defendant's proffered grounds for dismissal.

Finally, regarding the fifth and sixth assurances, Plaintiff alleges Defendant promised "it would be guided in the acquisition of real property by 49 CFR Part 24, subpart B, and that it had complied and would comply with Advisory Circular 150/5300-13, Changes 1 through 5," and would comply with the Uniform Relocation Assistance and Real Property Acquisition Policies Act.  *See* FAC, ¶¶ 19, 23, 31, 35, 53, 57, 65, 77, 89, 100, 111, 122, 126, 134, 146, 158.  Because the Court has already addressed Defendant's promise to comply with Circular 150/5300, the Court focuses on Defendant's promises to comply with 49 CFR Part 24 and the Uniform Relocation Assistance and Real Property Acquisition Policies Act.  Defendant argues the FAC does not describe how Defendant failed to comply with those provisions, particularly where "no property was actually acquired" and no "persons were displaced as a result." *See* Doc. No. 20.  The Court agrees, and relies on the same reasoning in concluding, below,

that Plaintiff has not satisfied the pleading requirements of 9(b) in alleging the falsity of Defendant's statements. However, the argument does not support Defendant's overarching contention that none of the statements alluded to in the FAC can ever be objectively false for the purposes of FCA liability. Thus, for those purposes, the Court disregards the argument, and declines to dismiss any claims on the basis that they cannot, under any circumstances, be objectively false, as Defendant contends.

### iv. Statute of Limitations

In the Ninth Circuit, a *qui tam* plaintiff must initiate a civil action under the FCA "no more than (1) six years after the date on which the FCA violation is committed or (2) three years after the date when facts material to the right of action are known or reasonably should have been known by the *qui tam* plaintiff, whichever occurs last." *U.S. ex rel. Hyatt v. Northrop Corp.*, 91 F.3d 1211, 1218 (9th Cir. 1996); *see* 31 U.S.C. § 3731(b). "A suit under the Act must, in any event, be brought no more than ten years after the date on which the violation occurred." *Id.*; *see* 31 U.S.C. § 3731(b).

In Defendant's motion to dismiss, Defendant argues several of Plaintiff's causes of action are barred by the statute of limitations because they allege "violations that occurred more than 10 years ago." *See* Doc. No. 20. Defendant relies on the dates of grant applications and grant agreements as the dates of accrual. Plaintiff counters that the limitations period begins to run at the time a claim is made, or, if the claim is paid, at the time of payment. Also, Plaintiff argues that even were accrual to begin at the time a claim is made, the limitations period began when the County submitted claims requesting payment, not upon submission of grant applications or grant agreements. In Defendant's reply brief, Defendant admits that there is a split of authority regarding when the statute of limitations begins to run on FCA claims. Defendant urges the Court to follow cases that hold FCA claims accrue when a false or fraudulent claim is submitted—as opposed to the date of payment—which Defendant contends is the majority rule.

Regarding accrual, case law on the issue is sparse, particularly within this Circuit. However, absent instruction from the Ninth Circuit or the Supreme Court, the Court sides

with the majority of courts, and the only court in California, that have addressed the issue, to the Court's knowledge.  *See U.S. ex rel. Dugan v. ADT Sec. Servs., Inc.*, No. CIV.A.DKC 20033485, 2009 WL 3232080, at *4 (D. Md. Sept. 29, 2009) ("Courts in the majority of the federal circuits have concluded that the statute of limitations starts to run when a false claim is submitted to the government."); *U.S. ex rel. Condie v. Bd. of Regents of Univ. of California*, No. C89-3550-FMS, 1993 WL 740185, at *3 (N.D. Cal. Sept. 7, 1993).  Accordingly, the Court finds that the statute of limitations begins to run on an FCA claim upon submission of a false claim.

However, the Court disagrees with Defendant regarding when submission of allegedly false claims occurred in the context of this case.  As Plaintiff states, it is the submission of the claims for payment that trigger potential FCA liability here, not submission of the applications for funding or execution of the grant agreements, despite that those documents may have contained false or fraudulent statements and thus rendered subsequent claims for payment fraudulent under a promissory fraud theory of liability.  *See United States v. McNinch*, 356 U.S. 595, 599 (1958) ("[T]he conception of a claim against the government normally connotes a demand for money or for some transfer of public property."); *U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006) (defining a claim as "a call on the government fisc" and as involving "some sort of request for the government to pay out money or forfeit moneys due"); *United States v. Ueber*, 299 F.2d 310, 313 (6th Cir. 1962) ("[T]he causes of action sued upon did not come into being, nor was there an actual violation of [the FCA], until the first voucher seeking payment of the false claims was presented to the United States.").

Here, Plaintiff commenced this action on December 2, 2015.[9]  Thus, Plaintiff may not rely on any claims for payment that Defendant filed prior to December 2, 2005 as grounds for his FCA claims.  Accordingly, the Court **GRANTS** Defendant's motion to

---

[9] Plaintiff states that this action was commenced on November 25, 2015, which is the date the complaint was signed.  However, "[a] civil action is commenced by filing a complaint with the court."  *See* Fed. R. Civ. P. 3.  Plaintiff filed the complaint on December 2, 2015.  *See* Doc. No. 1.

dismiss only to the extent that any of Plaintiff's causes of action rely on claims for payment or reimbursement dated prior to December 2, 2005. Based on the FAC as well as relevant exhibits, the Court's finding partially affects Plaintiff's first and second causes of action only, based on how Plaintiff has organized his claims in the FAC. Specifically, it appears that Defendant submitted a claim for $58,652.00, and another claim for $310,802.00 on October 5, 2005. *See* Doc. No. 20, Exh. 32, p. 333, Exh. 33, p. 340. The Court **DISMISSES** Plaintiff's causes of action with prejudice and without leave to amend as to Defendant County of San Diego, to the extent that those causes of action rely on the aforementioned October 2005 claims or any other claims submitted prior to December 2, 2005.[10]

On another note, Defendant also argues other claims are time-barred because they concern "violations that occurred more than six years ago, and no equitable tolling could have occurred." *See* Doc. No. 20. The parties agree that *qui tam* Plaintiffs can take advantage of equitable tolling, but Defendant contends that whether Plaintiff could have known earlier of the facts underlying his claims is irrelevant because the United States should have known of an "open and notorious" office building. *See* Doc. Nos. 20, 26. However, it would be inappropriate and premature for the Court to dismiss any other claims on the basis that the United States knew or should have known of the allegedly incompatible land use. "A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'" *See Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006). "[A] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Id.* (quoting *Supermail Cargo, Inc. v. U.S.*, 68 F.3d 1204, 1206 (9th Cir. 1995)). Defendant's argument is too speculative, and is unsupported by the FAC. It is not clear beyond doubt, on the face of the pleadings, that the United States

---

[10] The Court **DISMISSES** those claims without prejudice as to the United States.

knew or should have known of the existence of the building, that it was in the RPZ, that it was being used for an incompatible use, and that it was continually noncompliant throughout the entire period of time during which Defendant submitted the claims at issue. Accordingly, the Court declines to dismiss any claims on those grounds.

### v. Pleading Standards Under Rules 8 and 9(b)

"The FCA is an anti-fraud statute," and as such, complaints containing FCA claims must be both plausible under Rule 8 and pleaded with particularity under Rule 9(b). *See Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001); *Campie*, 2017 WL 2884047, at *4; Fed. R. Civ. P. 8, 9(b). As mentioned, to plead and prove a FCA claim, a plaintiff must demonstrate: "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *See Hendow*, 461 F.3d at 1174. "Under Rule 9(b), 'circumstances constituting fraud or mistake' must be stated with particularity, but 'malice, intent, knowledge, and other conditions of a person's mind,' including scienter, can be alleged generally." *United States v. Corinthian Colleges*, 655 F.3d 984, 996 (9th Cir. 2011) (citing Fed. R. Civ. P. 9(b) and *Zucco Partners, LLC v. Digimarc Corp.,* 552 F.3d 981, 990 (9th Cir. 2009)). While a complaint "need not 'identify representative examples of false claims to support every allegation,'" the complaint must still allege the "particular details of a scheme to submit false claims." *See United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (internal quotations omitted).

Defendant argues the FAC does not satisfy pleading requirements under Rules 8 and 9(b). The Court agrees. Plaintiff's allegations are insufficient to plead falsity, scienter, and materiality under the applicable pleading standards.

Regarding falsity, the FAC summarizes several statements allegedly made by Defendant, and then, lumping all of those statements together, urges that they were false. This does not suffice under the particularity requirements of Rule 9(b), which requires a plaintiff to describe "the who, what, when, where, and how" of the fraudulent misconduct, "including what is false or misleading about a statement, and why it is

false." *See Vess*, 317 F.3d at 1106–07; *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016); *U.S. ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001) (stating that a plaintiff must "assert particular details to support its allegations of fraud"). Here, Plaintiff fails to sufficiently state why or how Defendant's statements were false or fraudulent. Plaintiff makes factual arguments in his opposition brief to support of his contention that the subject statements could be objectively false, but those facts are not present in the FAC.

For example, as mentioned above, based on the FAC, it is unclear how Defendant's alleged assurances "that it would be guided in the acquisition of real property by 49 CFR Part 24, subpart B," or comply with the Uniform Relocation Assistance and Real Property Acquisition Policies Act, were false. Further, as perhaps the most glaring example, the FAC fails to describe why Defendant's response of "Palomar Airport Comprehensive Land Use Plan" was false. To illustrate, the FAC merely states that the County represented that "in order to assure compatible land use . . . it had taken the step of causing the adoption" of the Plan. *See* FAC, ¶¶ 19, 65, 77, 89, 134, 146, 158. Without more, the FAC concludes that all of Defendant's statements were false because Defendant never intended to fulfill any promises. Thus, the FAC indicates that Defendant's statement regarding the Plan was false presumably because Defendant did not adopt, or perhaps abide by, that Plan. However, in Plaintiff's opposition brief, Plaintiff does not argue that Defendant never adopted or complied with the Plan. Rather, Plaintiff argues that Defendant's statements regarding the Plan were false because they constituted promises to make certain that land use surrounding the airport was free from incompatible land uses, *i.e.*, office buildings, but the Plan did not actually prevent or eliminate the allegedly incompatible land use. Thus, the Plan did not "assure compatible usage of land." *See* Doc. No. 23. That reason is absent from the FAC, however.

As a final note regarding falsity, Plaintiff's vague allegations are particularly problematic where Plaintiff's claims are primarily promissory fraud claims. To elaborate, under a promissory fraud theory of liability, "the promise must be false when

made." *Hendow*, 461 F.3d at 1174. Accordingly, Plaintiff must add some factual support for the proposition that Defendant did not intend to comply with its assurances or statements at the time those assurances or statements were made. This is particularly so in light of the fact that some of Defendant's allegedly false assurances involved a promise to acquire an interest in land within ten or twenty years of the assurances, meaning Defendant may still have time to do so. In such circumstances, the alleged fact that Defendant has not yet acquired such an interest is not very probative of falsity or fraudulent intent.

Regarding scienter, Plaintiff need only make general allegations pursuant to Rule 9(b). But, Plaintiff must still plausibly allege Defendant "knew that its statements were false, or that it was deliberately indifferent to or acted with reckless disregard of the truth of the statements," and knowingly presented those statements anyway. *Corinthian Colleges*, 655 F.3d at 996; *Campie*, 2017 WL 2884047, at *9 (stating scienter requires "knowledge of [] falsity and [] intent to deceive"); *United States ex rel. Hagood v. Sonoma County Water Agency,* 929 F.2d 1416, 1421 (9th Cir. 1991). The FAC is vague and conclusory regarding scienter. Again, the FAC lumps all statements together and concludes that Defendant never intended to comply with its various assurances. Further, the FAC states that testimony of Peter Drinkwater, the Director of Airports for the County of San Diego, in a prior case, illustrates that the County "had no intent of performing its grant assurance and promises made to the FAA." *See* FAC, ¶ 15. However, it is unclear whether Mr. Drinkwater actually testified as to the County's lack of intent, or if that is Plaintiff's conclusion based on other, undisclosed, testimony.

Regarding materiality and causation, Plaintiff's allegations do not satisfy 9(b) for similar reasons. "The materiality standard is demanding." *Universal Health Servs., Inc.*, 136 S. Ct. at 2002–03. "A misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment." *Id.* "Nor is it sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of

the defendant's noncompliance." *Id.* "Materiality, in addition, cannot be found where noncompliance is minor or insubstantial." *Id.* Further, courts consider whether there is any relationship between the subject matter of the false statement and the provision of the benefit. *See Ebeid*, 616 F.3d at 998.

Here, Plaintiff merely concludes, with respect to every cause of action: "The FAA would not have provided the federal funding for the project had it been aware the foregoing was false." *See* FAC, ¶¶ 20, 32, 43, 54, 66, 78, 90, 101, 112, 123, 135, 147, 159. This is insufficient, particularly where the materiality standard requires more than the government's designation of "compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment." *See Universal Health Servs., Inc.*, 136 S. Ct. at 2002–03. In sum, Plaintiff fails to sufficiently allege that Defendant's assertions of compliance, or promises to remove the alleged office building in the RPZ, were the "sine qua non of receipt of" the government funding received. *See Ebeid*, 616 F.3d at 998.

Lastly, at the end of the FAC, Plaintiff asserts a cause of action for "other claims," alleging that "between the years 2005 and 2015 the County applied for and received grants . . . and made the same false assertions and promises as hereinabove described . . . under the same or similar circumstances as those illustrated above." *See* FAC, ¶ 167. Such allegations fall short of the specificity required by Rule 9(b).

For the foregoing reasons, Plaintiff does not sufficiently plead causes of action under the FCA. While Defendant may have been put on notice of the grounds for Plaintiff's claims, as illustrated by Defendant's briefing and proffered exhibits, Rule 9(b) also "serves 'to deter the filing of complaints as a pretext for the discovery of unknown wrongs, to protect defendants from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis.'" *See United Healthcare Ins. Co.*, 848 F.3d at 1180 (quoting *Bly–Magee*, 236 F.3d at 1018). Accordingly, the Court **GRANTS** Defendant's motion to dismiss, and **DISMISSES** this

action in its entirety without prejudice, and with leave to amend.

**CONCLUSION**

As set forth above, the Court **GRANTS** Defendant's motion to dismiss, and **DISMISSES** all of Plaintiff's causes of action. Within **21 days** of this Order, Plaintiff may file a Second Amended Complaint that cures the deficiencies described above. Pursuant to Civil Local Rule 15.1(c), if Plaintiff wishes to file a Second Amended Complaint, Plaintiff must also include "a version of that pleading that shows—through redlining, underlining, strikeouts, or other similarly effective typographic methods—how that pleading differs from the previously dismissed pleading." *See* Civ. LR 15.1(c).

**IT IS SO ORDERED.**

Dated: August 2, 2017

Hon. Michael M. Anello
United States District Judge