**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

UNITED STATES OF AMERICA, *ex rel*
Michael Durkin

                                        Plaintiff,

v.

COUNTY OF SAN DIEGO,

                                        Defendant.

Case No.:  15cv2674-MMA (WVG)

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

[Doc. No. 32]

  Plaintiff Michael Durkin filed this action under the *qui tam* provisions of the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq*., on behalf of the United States of America and against Defendant County of San Diego.  *See* Doc. Nos. 1, 17, 31.  The United States declined to intervene in this action.  *See* Doc. No. 7.  Defendant now moves to dismiss the Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that all causes of action are not pled with the specificity required by Rule 8 and Rule 9(b) of the Federal Rules of Civil Procedure.  *See* Doc. No. 32-1 ("MTD").  Plaintiff Durkin filed an opposition [Doc. No. 33 ("Oppo.")], the United States of America filed a statement of interest [Doc. No. 34], and Defendant filed a reply [Doc. No. 35 ("Reply")].  The Court found the matter suitable for determination on the

papers and without oral argument pursuant to Civil Local Rule 7.1.d.1.  Doc. No. 36.  For the reasons set forth below, the Court **GRANTS** Defendant's motion.

<u>**BACKGROUND**</u>[1]

By way of background, Plaintiff[2] alleges that in 2014, he was involved in a lawsuit in which the owners of two properties—Lots 24 and 25—located near the McClellan-Palomar Airport sued the County of San Diego for inverse condemnation.  Doc. No. 31 ("SAC"), ¶ 7.  The SAC states that Plaintiff was the manager of the two entities that owned those properties.  *Id.*  In the course of that litigation, Plaintiff alleges he uncovered the information underlying this action.  *Id.*  In the instant case, Plaintiff asserts thirteen claims against Defendant County of San Diego under the FCA, and requests damages and civil penalties.  *See generally*, SAC.  Plaintiff alleges Defendant made false statements to the Federal Aviation Administration ("FAA") in applying for grants for the maintenance and development of the Palomar-McClellan Airport located in Carlsbad, County of San Diego, California.  SAC, ¶ 1.

Plaintiff alleges the FAA makes funding "available to improve American airports," and provides funds to recipients "primarily to ensure the safety of airports, the surrounding areas, and the people in or around the airports."  SAC, ¶ 9.  In order to obtain federal funds through the FAA, Plaintiff alleges applicants must "make statements and promises, and give assurances regarding, inter alia, how the land surrounding the airport is being controlled by the applicant to protect airport operations from hazards on the ground, and conversely to protect people and property on the ground from hazards inherent to airport operations."  *Id.*  Further, the SAC states that "[u]pon approving a grant, the FAA requires the applicant to make certain statements, assurances, and

---

[1] Because this matter is before the Court on a motion to dismiss, the Court must accept as true the allegations set forth in the complaint.  *See Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 740 (1976).

[2] For convenience, "Plaintiff" hereinafter refers to *Qui Tam* Plaintiff Durkin, as opposed to the United States.

promises regarding how the airport and surrounding areas will be operated, maintained, improved, or acquired" for safety purposes. SAC, ¶ 10. Then, Plaintiff alleges, "a grantee is required to file applications for payment to the FAA in the form of receipts or vouchers," which "impliedly or expressly recertify all the promises, assurances, and statements previously made in the grant applications and agreements." SAC, ¶ 11.

In particular, Plaintiff alleges Defendant applied, was approved, and obtained funding for use in relation to the McClellan-Palomar Airport. SAC, ¶ 13. Plaintiff contends that, in 1995, Defendant knew that certain properties were in the Runway Protection Zone ("RPZ")[3], and obtained federal funds from the FAA in order to acquire those properties. SAC, ¶¶ 20-23. Plaintiff alleges that later in 1995, Defendant reprioritized "its projects because it determined the cost of acquisition was more than it was willing to pay" and "reallocated [the] funds granted by the FAA for such acquisition to other airport improvements." SAC, ¶ 22. The SAC asserts that the County knew that it was required under federal regulations to "acquire interests in the non-airport owned RPZ property sufficient to prevent or eliminate incompatible development." SAC, ¶ 23. Plaintiff alleges that, since its 1995 postponement, Defendant has not "taken any step to acquire any interest at all in said lots, much less an interest sufficient to prevent or eliminate incompatible uses in the RPZ." SAC, ¶ 24. Plaintiff alleges that Defendant "did nothing to prevent the development of Lot 24 with an office building in 2004 . . . and has done nothing since that time to eliminate this office building from the RPZ . . . ." *Id.* Plaintiff alleges this safety hazard continues to the present time, despite Defendant's assertions in its grant applications. *See id.*

Specifically, Plaintiff alleges Defendant, on multiple occasions between 2005 and 2014, made misrepresentations to the FAA in applying for, entering into agreements for, or making claims for federal funds. *See generally*, SAC. Each cause of action is based

---

[3] The RPZ is defined as "an area off the end of all airport runways." SAC, ¶ 15.

on four or five allegedly false statements contained in thirteen different written FAA grant applications or agreements. *See generally*, *id.*

**L**EGAL **S**TANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 12(b)(6). The plausibility standard demands more than "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and alterations omitted). Instead, the complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

Under Rule 9(b), when the complaint includes allegations of fraud, a party must "state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). "In other words, the complaint must set forth what is false or misleading about a statement, and why it is false." *Rubke v. Capitol Bancorp Ltd*, 551 F.3d 1156, 1161 (9th Cir. 2009) (internal quotation marks omitted). The plaintiff's allegations of fraud must be "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything

4

wrong." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal citations and quotation marks omitted). Further, the plaintiff must describe "the who, what, when, where, and how" of the fraudulent misconduct charged. *Id.* at 1106. In other words, the plaintiff must specify the time, place, and content of the alleged fraudulent or mistaken conduct. *In re Glenfed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547-48 (9th Cir. 1994). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Failure to satisfy this heightened pleading requirement can result in dismissal of the claims. *Vess*, 317 F.3d at 1107.

## REQUESTS FOR INCORPORATION BY REFERENCE

As an initial matter, both parties request the Court incorporate by reference some documents into the SAC. *See* Doc. Nos. 32-2, 33-1. In determining the propriety of a Rule 12(b)(6) dismissal, courts generally may not look beyond the complaint for additional facts. *See United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908; *see also* Fed. R. Evid. 201; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 936, 942 (9th Cir. 2009). A document "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Ritchie*, 342 F.3d at 908 (internal citations omitted). In other words, a court "may consider a document the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statute on other grounds in Abrego v. Dow Chem. Co.*, 443 F.3d 676 (9th Cir. 2006); *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

5

Defendant requests the Court incorporate by reference copies of thirteen grant applications and grant agreements underlying Plaintiff's claims, and the Federal Aviation Administration Advisory Circular[4] referenced in the SAC.  *See* Doc. No. 32-2, 32-3, Exhibits 1-27.  Plaintiff does not dispute the authenticity of these documents, but opposes Defendant's request on the grounds that "the exhibits submitted to the Court [by Defendant] are not a full true and correct copy of the document."  Doc. No. 33-3 at 1.  Plaintiff specifies that "each grant application and grant agreement omits form sets of assurances which are the basis for certain Plaintiff's claims herein alleged."  *Id.* at 2.  By way of example, Plaintiff requests the Court incorporate by reference a grant application dated February 1, 2005—which he asserts is the full and complete copy of Defendant's Exhibit 1— and a grant agreement dated August 9, 2005—which he asserts is the full and complete copy of Defendant's Exhibit 2.  *See id.*, Exhibits 1-2.  Defendant does not oppose Plaintiff's request for incorporation by reference.  *See* Reply.  Further, Plaintiff's claims necessarily rely on each of the exhibits submitted by Defendant and Plaintiff.

Because Defendant does not dispute Plaintiff's requests for incorporation by reference, and Plaintiff's claims necessarily rely on the exhibits, the Court **GRANTS** Plaintiff's requests.  In light of incorporating Plaintiff's exhibits by reference into the SAC and for the purposes of avoiding duplicity, the Court **DENIES** Defendant's requests for incorporation by reference with respect to Exhibits 1 and 2.  However, Plaintiff does not submit complete copies of Defendant's remaining exhibits.  *See id.*  Accordingly, the Court **GRANTS** Defendant's requests to incorporate Exhibits 3 through 27 by reference into the SAC as the applicable grant applications or agreements without the grant assurances.

//

---

[4] According to the record, an "Advisory Circular" is a document issued by the United States Department of Transportation, Federal Aviation Administration, delineating guidelines and standards pertaining to aviation.  *See* Doc. No. 32-3, Exhibit 27.

Defendant moves to dismiss Plaintiff's False Claims Act ("FCA") causes of action on the grounds that they "are not pled with the specificity required by Rules 8 and 9(b) of the Federal Rules of Civil Procedure." MTD at 7. More specifically, Defendant argues that "the SAC fails to adequately allege non-conclusory facts supporting the FCA elements of falsity, materiality, and scienter." *Id.* Plaintiff opposes dismissal of any claims. *See* Oppo. Also, the United States has filed a statement of interest in response to the County's motion to dismiss, despite that the United States has declined to intervene in this action. Doc. No. 34. The United States requests only that if the Court decides to dismiss any claims in response to the County's motion, the Court dismiss such claims without prejudice as to the United States. *Id.* at 2. Otherwise, the United States asserts that it takes no position as to the merits of the pending motion to dismiss. *Id.* at 6.

## 1. *The False Claims Act*

"The False Claims Act makes liable anyone who 'knowingly presents, or causes to be presented, a false or fraudulent claim for [government] payment or approval,' or 'knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim'" for government payment. *See United States ex rel. Campie v. Gilead Scis.*, 862 F.3d 890, 898-99 (9th Cir. 2017) (quoting 31 U.S.C. § 3729(a)(1)(A),(B)). While, "[i]n an archetypal *qui tam* False Claims action, such as where a private company overcharges under a government contract, the claim for payment is itself literally false or fraudulent," liability under the FCA "is not limited to such facially false or fraudulent claims for payment." *United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1170 (9th Cir. 2006). Rather, "the scope of false or fraudulent claims should be broadly construed." *Id.* Relevant here, "[t]he principles embodied in this broad construction of a 'false or fraudulent claim' have given rise to two doctrines that attach potential False Claims Act liability to claims for payment that are not explicitly and/or independently false: (1) false certification (either express or implied); and (2) promissory fraud." *Id.* at 1171.

In false certification cases, "parties avail themselves of benefits of some type, such as loan guarantees or agricultural supports, through false statements which create eligibility that otherwise would not exist." *See United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir. 1996) (John T. Boese, *Civil False Claims and Qui Tam Actions* 1-29 to 1-30 (1995)). Mere regulatory violations do not create liability. *Id.* Rather, "[i]t is the false *certification* of compliance which creates liability when certification is a prerequisite to obtaining a government benefit." *Id.* Similarly, under an implied false certification theory, "'when a defendant submits a claim, it impliedly certifies compliance with all conditions of payment," and "if the claim fails to disclose the defendant's violation of a material statutory, regulatory, or contractual requirement . . . the defendant has made a misrepresentation that renders the claim 'false or fraudulent' under § 3729(a)(1)(A).'" *Campie*, 862 F.3d at 901 (quoting *Universal Health Servs. v. United States ex rel. Escobar*, 136 S.Ct. 1989, 1999 (2016)).

The theory of promissory fraud is closely related to false certification, and dictates "that liability will attach to each claim submitted to the government under a contract, when the contractor extension of government benefit was originally obtained through false statements or fraudulent conduct." *Hendow*, 461 F.3d at 1173. Promissory fraud "sometimes differs from the false certification theory only in a temporal sense." *United States ex rel. Hansen v. Deming Hosp. Corp.*, 992 F. Supp. 2d 1137, 1154 (D.N.M. 2013). For example, "[w]hile the false certification theory alleges that a contractor certified that it *did* comply with a statute, regulation, or contractual term when it knew at the time that it did not do so, the promissory fraud theory may allege that a contractor originally certified that it *would* comply with a law, regulation, or term when it knew at the time that it would not do so." *Id.*

Under either a false certification or promissory fraud theory, "the essential elements of False Claims Act liability remain the same: (1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *Hendow*, 461 F.3d at 1174. In

considering a claim of false certification, there are "two major considerations: '(1) whether the false statement is the cause of the Government's providing the benefit; and (2) whether any relation exists between the subject matter of the false statement and the event triggering Government's [sic] loss.'" *Id.* at 1171 (quoting *Hopper*, 91 F.3d at 1266). Under either theory, a false claim or promise must be the "sine qua non of receipt of state funding." *See Ebeid v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010). Further, "for promissory fraud to be actionable under the False Claims Act, 'the promise must be false when made.'" *Hendow*, 461 F.3d at 1174 (quoting *Hopper*, 91 F.3d at 1267). "Innocent mistakes, mere negligent misrepresentations and differences in interpretations are not false certifications under the Act." *Hopper*, 91 F.3d at 1267.

## 2. *Identification of Defendant's Statements*

Defendant first argues that the SAC does not identify the alleged false statements with sufficient particularity. MTD at 10-22. Defendant asserts it had to "guess" which provisions contained the allegedly false statements with respect to false statements one and four. MTD at 10-11, 19-20. Defendant further contends that it could not locate the provisions containing false statements two, three, and five. MTD at 15-18, 21. Plaintiff counters, arguing that "[t]he SAC clearly identifies the time, place, and nature of each fraudulent statement." Oppo. at 10. Specifically, Plaintiff contends "[e]ach Cause of Action identifies a grant application or grant agreement submitted by the County to the FAA which contains the fraudulent statement, and the date upon which the application was submitted or grant agreement [was] executed." *Id.* Further, Plaintiff asserts that "[e]ach false statement is paraphrased." *Id.*

Rule 9(b) of the Federal Rules of Civil Procedure requires particularized allegations of the circumstances constituting fraud. Fed. R. Civ. P. 9(b). Thus, "[t]he time, place, and content of an alleged misrepresentation may identify the statement or the omission complained of . . . ." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d at 1547-48. Defendant contends Plaintiff must identify where each statement is specifically located within the grant agreement or grant application. *See* MTD at 10-20. The Court disagrees

and finds that Plaintiff has identified the statements with sufficient particularity. Here, Plaintiff has identified the date, document, and paraphrased content of the allegedly false statements. *See* Oppo. at 10; *see also* SAC.

In the first statement, Plaintiff alleges that in each of the thirteen grant applications, Defendant "certified, represented, and assured the FAA in the above-described applications that it had assured compatible land use in the RPZ by the adoption of the 'Palomar Airport Comprehensive Land Use Plan.'" SAC ¶¶ 30, 78, 126, 174, 222, 258, 294, 330, 366, 402, 450, 486, 522. Defendant's "best guess" is that this certification is contained in Part II—Section C of the grant applications. MTD at 11. The relevant portion requires the applicant to respond to the following:

> The Sponsor hereby represents and certifies as follows:
> 1. Compatible Land Use. – The Sponsor has taken the following actions to assure compatible usage of land adjacent to or in the vicinity of the airport:

*See* Doc. No. 33-1, Exhibit 2; s*ee also* Doc. No. 32-3, Exhibits 3, 5, 7, 9, 11, 13, 15, 17, 19, 21, 23, 25. In each application, Defendant responded: "Palomar Airport Comprehensive Land Use Plan." *See* Doc. No. 33-1, Exhibit 2; s*ee also* Doc. No. 32-3, Exhibits 3, 5, 7, 9, 11, 13, 15, 17, 19, 21, 23, 25. Plaintiff states that this is the correct provision statement one paraphrases. Oppo. at 12.

In the fourth statement, Plaintiff alleges Defendant promised in five of the grant agreements "to acquire an interest in properties located within the RPZ sufficient to eliminate existing incompatible uses of land in the RPZ and sufficient to prevent development of further incompatible uses." SAC, ¶¶ 60, 108, 156, 204, 432. Defendant explains that "it appears" this allegedly false statement is based on the following language in paragraph 15 of the grant agreements:

> **15. RUNWAY PROTECTION ZONES:** The Sponsor agrees to take the following actions to maintain and/or acquire a property interest, satisfactory to the FAA, in the Runway Protection Zones:
> **I. Existing Fee Title Interest in the Runway Protection Zone:** The Sponsor agrees to prevent the erection or creation of any

15cv2674-MMA (WVG)

structure or place of public assembly in the Runway Protection Zone, except for NAVAIDS that are fixed by their functional purposes or any other structure approved by the FAA. Any existing structures or uses within the Runway Protection Zone will be cleared or discontinued unless approved by the FAA.

    **II.**    **Existing Easement Interest in the Runway Protection Zone:** The Sponsor agrees to take any and all steps necessary to ensure that the owner of the land within the designated Runway Protection Zone will not build any structure in the Runway Protection Zone that is a hazard to air navigation or which might create glare or misleading lights or lead to the construction of residences, fuel handling and storage facilities, smoke generating activities, or places of public assembly, such as churches, schools, office buildings, shopping centers, and stadiums.

**Future Interest in the Runway Protection Zone:** The Sponsor agrees that it will acquire fee title or less-than-fee interest in the Runway Protection Zones for runways that presently are not under its control within ten[5] years of this Grant Agreement. Said interest shall provide the protection noted in above Subparagraphs a and b.

Doc. No. 32-3, Exhibits 4, 6, 8, 20, 24, 20; Doc. No. 33-1, Exhibit 1. Plaintiff states that paragraph 15 of the grant agreements are the correct provisions being paraphrased in the fourth false statement. Oppo. at 17.

    In the second statement, Plaintiff alleges that Defendant certified in all of the grant agreements that "it was in compliance with all applicable FAA Advisory Circulars and regulations applicable to AIP[6] projects, including compliance with FAA Advisory Circulars AC 150/5300-13 and AC 150/5100, and 49 CFR Part 24." SAC, ¶¶ 38, 86, 134, 182, 230, 266, 302, 338, 374, 410, 458, 494, 530. In the fifth statement, Plaintiff alleges that Defendant promised in all of the grant agreements "that it would be guided in the acquisition of real property by 49 CFR Part 24, subpart B, and that it had complied and would comply with Advisory Circular 150/5300-13, Changes 1 through 5, and

---

[5] Causes of action 1, 3, and 4 state Defendant's promise would be fulfilled in 10 years, cause of action 2 states 20 years, and cause of action 10 omits the term of years. SAC, ¶¶ 60, 108, 156, 204, 432.
[6] AIP refers to "Airport Improvement Program." *See* Doc. No. 20, Exhibit 31.

150/5100." SAC, ¶¶ 72, 120, 168, 216, 252, 288, 324, 360, 396, 444, 480, 516, 552.
Defendant contends these certifications are not in the grant agreement, and assumes they are in assurances incorporated into the grant agreements. MTD at 15 n.8. Plaintiff explains that statements two and five "correspond with the Sponsor Certification and Assurance 34 in the Grant Agreements." *Id.* at 15. That assurance states:

> **C.    Sponsor Certification.** The sponsor hereby assures and certifies, with respect to this grant that:
>
> **1.    General Federal Requirements.** It will comply with all applicable Federal laws, regulations, executive orders, policies, guidelines, and requirements as they relate to the application, acceptance and use of Federal funds for this project including but not limited to the following:
>
> . . .
>
> **34.    Policies, Standards, and Specifications.** It will carry out the project in accordance with policies, standards, and specifications approved by the Secretary including but not limited to the advisory circulars listed in the Current FAA Advisory Circulars for AIP projects, dated 7/1/05 and included in this grant, and in accordance with applicable state policies, standards, and specifications approved by the Secretary.

Doc. No. 33-1, Exhibit 1 at 6, 18.

In the third statement, Plaintiff alleges that in all thirteen of the grant agreements Defendant "expressly promised the FAA it would take appropriate action, to the extent reasonable, to restrict the use of land adjacent to or in the vicinity of the airport to activities and purposes compatible with normal airport operations, including the take-off and landing of planes." SAC, ¶¶ 48, 96, 144, 192, 240, 276, 312, 348, 384, 420. 468, 504, 540. Plaintiff contends this included promising that Defendant "would ensure compatible land uses in the RPZ in accordance with FAA Circulars 150/5300 and 150/5100," which means "restricting land use in the RPZ to prevent future office development and eliminate existing office development." SAC, ¶¶ 49, 97, 145, 193, 241, 277, 313, 349, 385, 421, 469, 505, 541.

Defendant contends that "the alleged promise . . . is not contained within the four corners of the agreement" and that Defendant is unsure where the statement comes from. *See* Oppo. at 10; MTD at 18. Plaintiff explains that statement three "refers to assurance 21 of the grant agreements." Oppo. at 16. That assurance provides:

> **C.   Sponsor Certification.** The sponsor hereby assures and certifies, with respect to this grant that:
>
> > **1.   General Federal Requirements.** It will comply with all applicable Federal laws, regulations, executive orders, policies, guidelines, and requirements as they relate to the application, acceptance and use of Federal funds for this project including but not limited to the following:
> >
> > . . .
> >
> > **21.   Compatible Land Use.** It will take appropriate action, to the extent reasonable, including the adoption of zoning laws, to restrict the use of land adjacent to or in the immediate vicinity of the airport to activities and purposes compatible with normal airport operations, including landing and takeoff of aircraft. In addition, if the project is for noise compatibility program implementation, it will not cause or permit any change in land use, within its jurisdiction, that will reduce compatibility, with respect to the airport, of the noise compatibility program measures upon which Federal funds have been expended.

Doc. No. 33-1, Exhibit 1 at 6, 13.

As a result, each allegedly false statement has been identified as paraphrasing a specific provision in a grant agreement, application, or the assurances incorporated therein. While Plaintiff's SAC could have provided more clarity by identifying the specific provisions of the grant agreements, applications, or assurances, Plaintiff was not required to do so. Therefore, the Court finds that the SAC's claims are sufficiently particular to identify each allegedly false statement because Plaintiff specified the date, document, and paraphrased content of the provisions containing the allegedly false statements.

**3.   *Falsity***

Defendant argues that Plaintiff failed to sufficiently plead with particularity that the five statements are false. MTD at 10-22. While the time, place, and content of an

13

alleged misrepresentation might identify the statement or omission, those circumstances do not constitute fraud.  *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d at 1547-48.  Thus, the statement must be false in order to be fraudulent.  *Id.* at 1548.  To prove falsity, a plaintiff "must set forth what is false or misleading about a statement, and why it is false.  In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading."  *Id.*  Ultimately, a complaint "need not identify representative examples of false claims to support every allegation," but the complaint must still allege the "particular details of a scheme to submit false claims."  *See United States ex rel. Swoben v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (internal quotations omitted).

## A.    <u>Statement 1</u>

With respect to the first statement delineated above, Defendant argues its response—"Palomar Airport Comprehensive Land Use Plan"—cannot give rise to FCA liability because the response is not objectively false and does not certify compliance with a statute or regulation.  MTD at 11-14.  Plaintiff counters that certification of compliance with a statute or regulation is not necessarily required if Defendant made a misrepresentation about compliance with a contractual requirement.  Oppo. at 8.  Plaintiff is correct that false certification of compliance with a contractual requirement is a misrepresentation that renders the claim false or fraudulent under the FCA.  *Campie*, 862 F.3d at 901 (citing *Escobar*, 136 S.Ct. at 1995).

Defendant also argues the response "Palomar Airport Comprehensive Land Use Plan," is not objectively false.  *Id.* at 12.  Defendant contends that Plaintiff's allegations that this answer "assured compatible land use in the RPZ by the adoption of the 'Palomar Airport Comprehensive Land Use Plan,'" which "restricted the use of RPZ land sufficient to eliminate existing, and prevent future development of, incompatible uses such as office buildings" are unsupported.  *Id.* at 12-13 (quoting SAC, ¶¶ 30-31).  Defendant asserts that

the Airport Comprehensive Land Use Plan ("ALCUP")[7] is adopted by the Airport Authority, not Defendant, and that the Airport Authority is responsible for assisting local agencies in ensuring compatible land uses in the vicinity of airports. *Id.* at 13. As such, Defendant claims that, as a matter of law, its answer cannot be interpreted as a certification that it adopted the plan or certified that all land was compatible and that the only reasonable interpretation is that the answer evinces Defendant looked at the ALCUP to ensure compatibility. *Id.*

As indicated in the Court's August 3, 2017 Order Granting Defendant's Motion to Dismiss ("Order"), "'at this stage, a court does not make factual findings.'" Doc. No. 28 ("Order") at 15 (citing *Browne v. McCain*, 612 F. Supp. 2d 1125, 1130 (C.D. Cal. 2009)). The Court again declines to determine as a matter of law the scope of Defendant's authority over land use. *See id.* Plaintiff alleges that Defendant "assured compatible land use in the RPZ by adoption of the 'Palomar Airport Comprehensive Land Use Plan,'" and promised to make sure that the RPZ was and would remain free from incompatible land uses, including office buildings. SAC, ¶¶ 30-31, 78-79, 126-27, 174-75, 222-23, 258-59, 294-95, 330-31, 366-67, 402-03, 450-51, 486-87, 522-23. Plaintiff further alleges that an office building existed in the RPZ and Lot 25 was zoned and planned for office or industrial use at the time the grant applications were made. SAC, ¶¶ 32, 80, 128, 176, 224, 260, 296, 332, 368, 404, 452. Moreover, Plaintiff contends Defendant never took any steps to acquire interest in RPZ lands to prohibit incompatible uses and had no intention of doing so in the future. *Id.* Because the SAC itself now alleges Defendant's statement was false for this reason, Plaintiff sufficiently pleads falsity with the specificity required under Rule 9(b). *See* Order at 15 n.8.

---

[7] Defendant explains that Palomar's Airport Comprehensive Land Use Plan is what is now called an airport land use compatibility plan ("ALCUP"). MTD at 12. An ALCUP "provides for the orderly growth of each public airport and the area surrounding the airport . . . and will safeguard the general welfare of the inhabitants within the vicinity of the airport and the public in general." *Id.* (internal citations and quotation marks omitted).

## B. Statements 2 and 5

Defendant asserts that the second and fifth allegedly false statements are insufficiently pleaded because Plaintiff failed to identify the portions of the Advisory Circulars ("AC") and the regulation Defendant allegedly violated. MTD at 15, 21-22. However, Rule 9(b) does not require Plaintiff to identify the specific portion of the ACs and the regulation Defendant allegedly violated; rather Rule 9(b) requires Plaintiff to plead with sufficient particularity the allegedly false statement and why and how that statement is false. *See In re GlenFed, Inc. Sec. Litig.*, 42 F.3d at 1548. In the SAC, Plaintiff identifies the content of the ACs and the regulation and explains how they render Defendant's statement false.

Specifically, Plaintiff alleges that AC 150/5300 declares that "[t]he RPZ's function is to enhance the protection of people and property on the ground. This is best achieved through airport owner control over RPZs. Control is preferably exercised through the acquisition of sufficient property interest in the RPZ and includes clearing RPZ areas (and maintaining them clear) of incompatible objects and activities." SAC, ¶ 16. AC 150/5300 also declares that office buildings, and any other use involving an assembly of people are incompatible uses prohibited in the RPZ by specifically stating "[i]t is desirable to clear the entire RPZ of all above-ground objects. Where this is impractical, airport owners, at a minimum, should maintain the RPZ clear of all facilities supporting incompatible activities." *Id.*

Plaintiff alleges that AC 150/5100 states that "[n]ormally the sponsor will acquire fee title to all land within the airport boundaries and for the [RPZ]. If fee acquisition for the RPZ is not practical then an avigation easement is required. . . . Generally, where less than fee title is proposed to be acquired the property rights acquired shall be sufficient to encumber the remainder real estate with provisions that will ensure full use of the property as needed for airport construction and/or for safe airport operations conforming to FAA requirements." SAC, ¶ 17. AC 150/5100 recommends "that the RPZ be acquired in fee, however, if this is not practical, an easement must be acquired that

adequately restricts land use. The easement acquired must . . . restrict current and future use of the land surface to preclude incompatible uses. Incompatible uses within the RPZ include land use for residences and places of public assembly (churches, schools, hospitals, office buildings, shopping centers, and other uses with similar concentrations of persons) and other uses inconsistent with airport operations." *Id.*

With respect to the federal regulation, Plaintiff alleges the FAA requires airport sponsors to comply with 49 CFR Part 24 requirements, which include that the airport owner: (1) "[m]ake every reasonable effort to acquire the real property expeditiously by negotiation;" (2) "[a]s soon as feasible notify the property owner in writing of the interest in acquiring the real property, and the basic protections provided to the owner by law and under 49 CFR Part 24;" (3) "[c]ause the real property interest to be acquired to be appraised prior to commencement of negotiations;" (4) "[b]efore initiating negotiations, cause an amount which it believes to be just compensation to be established, at not less than the approved appraisal, make a written offer to the property owner in said amount, and include a written statement of the basis for the offer of just compensation;" and (5) [n]ot defer the negotiations, and if the intent is to acquire by eminent domain, not delay so as to make it necessary for the owner to institute legal proceedings to prove the fact of the taking of the real property." SAC, ¶ 18.

Plaintiff alleges Defendant falsely certified it was in compliance with these ACs and federal regulation. SAC, ¶¶ 38, 72, 86, 120, 134, 168, 182, 216, 230, 252, 266, 288, 302, 338, 360, 374, 396, 410, 444, 458, 480, 494, 516, 530, 552. Plaintiff alleges this certification was false "because Lot 24 in the RPZ was at that time fully developed and occupied as an office building, and Lot 25 was vacant and zoned and planned for an office/industrial building, and there were no land use restrictions preventing or eliminating such uses, and Defendant . . . had not undertaken and had no intent to undertake an[y] steps to acquire an interest in said Lots sufficient to prevent or eliminate such incompatible uses." SAC, ¶¶ 38, 86, 134, 182, 230, 266, 302, 360, 338, 374, 410, 458, 494, 530; *see also* SAC, ¶¶ 74, 122, 170, 218, 254, 290, 326, 362, 398, 446, 482,

518, 554.  Plaintiff explains that the ACs required Defendant to acquire either a fee interest or an easement in RPZ property to preclude incompatible uses, but Defendant failed to do so, permitted an office building to be developed, and had no intent to acquire a sufficient property interest to eliminate the incompatible use.  Oppo. at 15-16.  Plaintiff therefore argues that Defendant could not truthfully certify its compliance with the ACs and the federal regulation because an incompatible use existed in the RPZ and it did not intend to acquire any interest to eliminate or restrict that incompatible use.  *Id.* at 16.

Based on Plaintiff's allegations, the falsity of statements two and five are pleaded with sufficient particularity to survive the instant motion to dismiss.  Plaintiff has identified Defendant's statements, explained the relevant portions of the ACs and federal regulation, indicated that Defendant's statements were false, and explained how Defendant's statements were false.

## C.   **Statement 3**

In the third statement delineated above, Plaintiff alleges that Defendant "promised the FAA it would take appropriate action, to the extent reasonable, to restrict the use of land" within the RPZ.  SAC, ¶¶ 48, 96, 144, 192, 240, 276, 312, 348, 420, 468, 504, 540.  Plaintiff alleges this is a false promise because at the time Defendant made the promise there was and still is an incompatible use, an office building, within the RPZ and Defendant had not taken any steps to eliminate the incompatible use.  SAC, ¶¶ 50, 98, 146, 194, 242, 278, 314, 350, 422, 470, 506, 542.

Defendant argues that because it only agreed to take "appropriate action, to the extent reasonable" to restrict land use in the RPZ, Defendant cannot be liable under the FCA.  MTD at 18.  Specifically, Defendant contends Plaintiff's allegation "ignores the obvious possibility that there was no reasonable and appropriate action available to fulfill the promise." *Id.*  Again, the Court does not make factual findings in determining the propriety of a Rule 12(b)(6) motion to dismiss, and accordingly, declines to rely on Defendant's argument that there was no reasonable and appropriate action available to

fulfill the promise.  *See* Order at 16.  Accordingly, statement three survives Defendant's falsity argument.

### D.  __Statement 4__

With respect to statement four, Defendant argues it cannot give rise to an FCA claim because it is qualified by statements which are not objectively false—"satisfactory to the FAA" and "unless approved by the FAA."  MTD at 15.  As explained in this Court's prior Order, "[w]ithout deciding as a matter of law what was required under the provisions, it appears to the Court that the provisions required sponsors to comply with the subsections *in order to* 'maintain and/or acquire a property interest satisfactory to the FAA.'"  Order at 14.  As such, Defendant had to agree to "prevent the erection or creation," of incompatible uses in the RPZ, or clear or "discontinue" such uses, "unless approved by the FAA," and to acquire an interest in the RPZ for runways not presently under Defendant's control.  Doc. No. 32-3, Exhibits 4, 6, 8, 20, 24, 20; Doc. No. 33-1, Exhibit 1.  As stated in this Court's prior Order, "[u]nder Defendant's interpretation, the subsections would be rendered either permissive, despite that the language indicates that they are mandatory requirements, or superfluous.  Sponsors would be left guessing what actions would be 'satisfactory to the FAA.'"  Order at 14-15.  Moreover, the fact that Plaintiff does not allege whether the FAA approved of the continuing incompatible use of a lot within the RPZ does not mean Defendant's statement was not objectively false.

Here, Plaintiff alleges Defendant promised to acquire an interest in properties located within the RPZ to eliminate existing incompatible uses and prevent development of future incompatible uses.  SAC, ¶¶ 60, 108, 156, 204, 432.  Plaintiff alleges an existing incompatible use existed on one lot in the RPZ and another lot in the RPZ was planned for an incompatible use when Defendant promised to eliminate such uses.  SAC, ¶¶ 61, 109, 157, 205, 433.  Further, Plaintiff alleges at the time Defendant made this promise it "had no intent to acquire *any* interest in the RPZ property."  SAC, ¶¶ 62, 110, 158, 206, 434 (emphasis added).  Plaintiff supports this allegation by providing the sworn testimony of the County Agent who signed each grant application and agreement on

behalf of the County. Plaintiff alleges that this agent, Peter Drinkwater, testified under oath that the County did not have any intent to acquire interests in Lots 23, 24, or 25. *Id.* In further support, Plaintiff alleges Eric Nelson, who was the County Airport Engineer between 2005 and at least August of 2015, testified under oath that Defendant was not aware of "any intent to acquire any interest at all in Lot 24 or 25" and also was not aware of any intent to prevent development of lots 24 and 25 which are incompatible with the airport. *Id.* As a result, the Court is unconvinced by Defendant's argument and finds that Plaintiff pleads the falsity of statement four with sufficient particularity.

### 4. *Materiality*

Defendant contends Plaintiff insufficiently pleads materiality because no relation exists between the false statements and the government's loss and the allegedly false assurances, promises, or certifications were not prerequisites to obtaining funding from the FAA. MTD at 22-26.

In FCA cases, "[t]he materiality standard is demanding." *Escobar*, 136 S. Ct. at 2003. "A misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment." *Id.* "Nor is it sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance." *Id.* "Materiality, in addition, cannot be found where noncompliance is minor or insubstantial." *Id.* Further, courts consider whether there is any relationship between the subject matter of the false statement and the provision of the benefit. *See Hopper*, 91 F.3d at 1266.

Defendant argues materiality is not met because no relation exists between the subject matter of the allegedly false statements and the event triggering the government's loss. MTD at 24-25. Defendant contends the subject matter of the false statements "relates to an office building located in the RPZ" and the event triggering the Government's loss is "the County's request for grant fund payments for 13 airport improvement projects." Reply at 4. This is a skewed understanding of Plaintiff's SAC.

*See* SAC. The false statements all relate to Defendant's assurances, promises, or certifications that it would eliminate or prevent incompatible land use in the RPZ and the event triggering the Government's loss is the existence of an ongoing safety hazard to people and property posed by incompatible uses in the RPZ. *See id.*

A relation does exist between the allegedly false statements and the government's alleged loss. *See United States ex rel. Holder v. Special Devices, Inc.*, 296 F. Supp. 2d 1167, 1174 n.2 (C.D. Cal. 2003) ("[I]t is apparent in the instant case that the government's loss—the pollution—was triggered by [Defendant's] alleged false warranty and promise to abide by environmental regulations."); s*ee also Hopper*, 91 F.3d at 1266 (stating the question is "whether *any* relation exists between the subject matter of the false statement and the event triggering Government's loss") (emphasis added). Here, each and every time Defendant submitted a grant application or signed a grant agreement, it warranted that it would comply with and abide by the FAA's requirements relating to land use in the RPZ. It is alleged that Defendant's failure to abide by those regulations led to ongoing safety hazards. The government's loss is caused by the existence of those safety hazards, which were triggered by Defendant's false certifications, assurances, and promises that it would abide by land use requirements in the RPZ.

Next, Defendant argues that Plaintiff "fails to plead facts sufficient to show any of the five allegedly false statements constituted certifications prerequisite to a condition of payment." MTD at 23. Defendant points to several allegations in the SAC it contends are conclusory and asserts that Plaintiff "has failed to plead sufficient facts with particularity showing the certifications at issue were prerequisites to obtaining a government benefit." MTD at 24. Plaintiff counters the certifications and promises were prerequisites. Oppo. at 20. Specifically, Plaintiff alleges that the FAA's mission is to "provide the safest, most efficient aerospace system in the world" and that the FAA's highest aviation priority is airport safety. SAC, ¶¶ 8-9. As a result, Plaintiff contends that "[b]ecause the FAA's very purpose for existence and its highest priority is to ensure the safety of American airports, it follows that the most important statements in the AIP

grant applications and grant agreements are those which are specifically calculated to enhance the safety of American airports." Oppo. at 20; *see* SAC, ¶¶15-17, 9, 21, 23 (stating that each of the allegedly false statements are required by the FAA to protect people and property in the RPZ).

Plaintiff alleges that the FAA would not have made the grants or disbursed grant funds to Defendant had it known Defendant was not assuring compatible uses in the RPZ because "to do so would have been a breach of the FAA's duties to the American public to ensure a safe system of airports." SAC, ¶¶ 36, 46, 57, 69, 84, 94, 105, 117, 132, 142, 153, 165, 180, 190, 201, 213, 228, 238, 249, 264, 274, 285, 300, 310, 321, 336, 346, 357, 372, 382, 393, 408, 418, 429, 441, 456, 466, 477, 492, 502, 513, 528, 538, 549. Thus, Plaintiff asserts that noncompliance with the assurances, statements, and rules leads to safety risks, which are most likely to influence the FAA's decision to provide funding. Oppo. at 20; SAC, ¶ 36. Plaintiff also alleges that, for this reason, the FAA would have been obligated to reject funding if Defendant had been truthful. SAC, ¶¶ 58, 70, 106, 118, 151, 154, 166, 202, 211, 214, 250, 286, 322, 358, 394, 430, 442, 478, 514, 550. With respect to statement five, Plaintiff merely alleges that "[t]he FAA would not have provided the federal funding for the project had it been aware the foregoing was false." SAC, ¶¶ 73, 121, 169, 217, 253, 289, 325, 361, 397, 445, 481, 517, 553.

Plaintiff also argues the FAA is "required by law to base its decision to approve or disapprove applications for AIP funds on the statements, certifications, and assurances therein." Oppo. at 21-22. In *Hendow*, the Ninth Circuit held that materiality is met where funding is "explicitly conditioned" on compliance with certain requirements. *Hendow*, 461 F.3d at 1175-76. However, after the Supreme Court's decision in *Escobar*, a statue or regulation which explicitly conditions compliance is only a non-dispositive factor to consider in the materiality analysis because "statutory, regulatory, and contractual requirements are not automatically material, even if they are labeled conditions of payment" *Escobar*, 136 S. Ct. at 2001. Accordingly, Plaintiff's argument

that the FAA is required by law to base its decision on compliance is only a factor to be considered.  *See id.*

Here, Plaintiff asserts the funding is explicitly conditioned in two different ways.[8] *See* Oppo. at 22.  First, 49 U.S.C.S. § 47107(a)(10) provides that "[t]he Secretary of Transportation may approve a project grant application for an airport development project *only if* the Secretary receives written assurances, satisfactory to the Secretary, that . . . appropriate action . . . has been or will be taken to the extent reasonable to restrict the use of land next to or near the airport to uses that are compatible with normal airport operations."  49 U.S.C.S. § 47107(a)(10) (emphasis added).  Second, 49 U.S.C.S. § 47107(g) states that "[t]he Secretary of Transportation may approve an application for a project grant *only if* the Secretary is satisfied that the requirements prescribed . . . have been or will be met."  49 U.S.C.S. § 47107(g)(2) (emphasis added).  Because both subsections of § 47107 demonstrate that compliance with the required certifications, assurances, or promises within the grant applications and agreements is a necessary condition of the FAA's disbursement of funds, Plaintiff argues compliance is a "prerequisite" to funding.  *See* 49 U.S.C.S. § 47107 (a)(10), (g)(2).

Defendant argues the subsections of the statute "relate to government <u>approval</u> of grant applications, not payment of grant funds," and therefore, materiality is not met.  Reply at 3 (emphasis in original).  That is a distinction without difference at this stage in the litigation.  If the Court were to find that conditions of grant approval were not conditions of disbursement of grant funds, "there would be no conditions of payment at

---

[8] Plaintiff argues 49 U.S.C.S. § 47108 also explicitly conditions compliance because it states an accepted offer in writing by the sponsor is a binding agreement and the government may pay only after a grant agreement is signed.  Oppo. at 22.  This, however, does not explicitly condition compliance, it merely states an accepted offer is a contract.  *See* 49 U.S.C.S. § 47108(a).  "The False Claims Act is not 'an all-purpose antifraud statute' or vehicle for punishing garden-variety breaches of contract or regulatory violations.  A misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment."  *Escobar*, 136 S. Ct. at 2003 (internal citation omitted).

all." *See Hendow*, 461 F.3d at 1176; *see also Siebert v. Gene Sec. Network, Inc.*, 75 F. Supp. 3d 1108, 1120-24 (N.D. Cal. 2014) (stating in a pre-*Escobar* case that materiality was met where the defendant "was required to certify compliance with . . . accounting regulations . . . and those certifications incorporated the Grants Policy Statement, which provided that compliance was 'essential to the grant relationship . . . .'").

"[W]hen evaluating materiality under the False Claims Act, the Government's decision to expressly identify a provision as a condition of payment is relevant, but not automatically dispositive." *Escobar*, 136 S.Ct. at 2003. Here, Plaintiff has not alleged with sufficient particularity proof of materiality, which "can include, but is not necessarily limited to, evidence that the defendant knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement." *See id.* In other words, the plaintiff "must allege some facts that show that the government actually does not pay claims if they involve the statutory[, regulatory, or contractual] violations in question." *United States ex rel. Ferris v. Afognak Native Corp.*, No. 3:15-cv-0150-HRH, 2016 WL 9088706, at *3 (D. Alaska Sept. 28, 2016). The materiality allegations in the SAC are still largely conclusory, stating that the FAA would not have disbursed funding had it known Defendant's assurances, certifications, or promises were false, because the FAA was required by law to assure compliance, and because the FAA's priority is ensuring safety. *See* SAC. Ultimately, Plaintiff has not sufficiently alleged that Defendant's assertions of compliance, or promises to remove the alleged office building in the RPZ were the "sine qua non of receipt of" the government funding received. *See Ebeid*, 616 F.3d at 998.

//
//
//
//
//

### 5. *Scienter*

Defendant argues Plaintiff's scienter allegations are insufficiently pleaded because they are vague and conclusory.[9]  MTD at 26.  In opposition, Plaintiff argues he sufficiently alleged:

> 1) that the grant assurances were binding and required the County to mitigate hazards to the RPZ; 2) that the FAA requires Sponsors to sufficiently control RPZ property to prevent incompatible land use in conformance with FAA Advisory Circulars; 3) that the requirements for controlling and protecting the RPZ are safety related and based on empirically demonstrated heightened risks from airport activities; 4) that FAA requirements prohibited office buildings in the RPZ; 5) that an office building was in fact developed in the RPZ and that it exists to this day and 6) that the FAA would not grant federal funding to an airport which was not being operated in compliance with safety requirements, and if the FAA had known of the incompatible use it would have either refused to fund the airport or required costly remedial measures prior to funding

Oppo. at 27.  Plaintiff argues scienter is also met because he alleges Defendant covered up the existence of an office building in the RPZ in its submissions to the FAA.  *Id.*

In short, scienter is "the knowing presentation of what is known to be false," and that the false statement or fraudulent conduct must be made with intent to deceive. *United States ex rel. Hochman v. Nackman*, 145 F.3d 1069, 1073 (9th Cir. 1998); *Hendow*, 461 F.3d at 1172; *see also* 31 U.S.C. § 3729(a)(1)(A), (B).  Under Rule 9(b), "scienter[] can be alleged generally."  *See United States ex rel. Lee v. Corinthian Colleges*, 655 F.3d 984, 996 (9th Cir. 2011) (internal quotation marks omitted).

---

[9] Defendant also argues that Plaintiff does not mention whether the false statements were material to the FAA's decision to pay the grant funds.  MTD at 27-28.  This is appropriately analyzed under the materiality element.  *Ferris*, 2016 WL 9088706, at * 2-3 ("The Court explained that '[w]hat matters is not the label the Government attaches to a requirement, but whether the defendant knowingly violated a requirement that the defendant knows is material to the Government's payment decision.'  In other words, 'a misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision in order to be actionable . . . .'") (citing *Escobar*, 136 S.Ct. at 2002) (emphasis added).

However, "'innocent mistakes, mere negligent misrepresentations and differences in interpretations' will not suffice to create liability." *Id.* (citing *Hendow*, 461 F.3d at 1174).

Under the FCA, "knowingly" does not require specific intent to defraud. 31 U.S.C. § 3729(b)(1)(B). Rather, the FCA defines "knowingly" as actual knowledge, deliberate ignorance of the truth or falsity of the information, or reckless disregard of the truth or falsity of the information. 31 U.S.C. § 3729(b)(1)(A)(i)-(iii). Further, "an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as an opposing inference or nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).

To show actual knowledge, Plaintiff must allege that Defendant knew its statements were false when made, meaning Defendant knew the statements were "lie[s]." *Wang v. FMC Corp.*, 975 F.2d 1412, 1421 (9th Cir. 1992), *overruled on other grounds*, *United States ex rel. Hartpence v. Kinetic Concepts, Inc.*, 792 F.3d 1121 (9th Cir. 2015); *see also Hendow*, 461 F.3d at 1171-72. Plaintiff alleges that Defendant was "acutely aware" of the FAA's requirement to acquire real property interests in the RPZ sufficient to prevent or eliminate incompatible uses. SAC, ¶ 20. In support of this allegation, Plaintiff alleges a 1995 written application for an AIP grant to the FAA declared that Lots 23, 24, and 25 are in the "West RPZ" and that Defendant "budgeted for acquisition" of these lots. SAC, ¶21. Later in 1995, Defendant allegedly postponed its plan to acquire Lots 23, 24, and 25 "because it determined the cost of acquisition was more than it was willing to pay." SAC, ¶ 22. In 1997, Plaintiff alleges Defendant again "expressly acknowledged that Lots 24 and 25 in the RPZ should be acquired." SAC, ¶ 23. However, Plaintiff alleges that Defendant "has not at any time since its 1995 postponement of the acquisition of said lots taken any step to acquire any interest at all in said lots . . . . even though it is fully aware that [Lot 24] is and has since 2004 been used and occupied continuously as an office building . . . ." SAC, ¶ 24. Plaintiff further

alleges that Defendant "at all relevant times had no intent of performing its grant assurances and promises made to the FAA in connection with the RPZ . . . ."  SAC, ¶ 25.

Additionally, Plaintiff alleges Defendant knew statements one through four were false when made because Defendant knew Lot 24 in the RPZ was fully developed and occupied as an office building and Lot 25 was zoned and planned for use as an office or industrial building.  SAC, ¶¶ 32, 38, 50, 63, 80, 86, 98, 110, 128, 134, 146, 157, 176, 182, 194, 205, 224, 230, 242, 260, 266, 278, 296, 302, 314, 332, 338, 350, 368, 374, 386, 404, 410, 422, 433, 452, 458, 470, 488, 494, 506, 524, 530, 542.  Plaintiff further alleges that Defendant intended to deceive the FAA into believing it had adequately protected the RPZ to satisfy the FAA's land use requirements, but had no intention at the time of the grant agreements to acquire any sufficient interests in the lots.  SAC, ¶¶ 32, 34, 39, 53, 65, 82, 87, 90, 101, 113, 130, 135, 138, 149, 158, 161, 178, 183, 186, 197, 206, 209, 226, 231, 234, 245, 262, 267, 270, 281, 298, 303, 306, 317, 334, 339, 342, 353, 370, 375, 378, 389, 406, 411, 414, 425, 434, 437, 454, 459, 462, 473, 490, 495, 498, 509, 526, 531, 534, 545.  In support, Plaintiff alleges Defendant submitted a bird's-eye photograph of the airport from before the office building was built—indicating Defendant was attempting to "hid[e] a critical development from the FAA, a safety hazard in the RPZ."  SAC, ¶¶ 43, 91, 102, 150, 162, 187, 198, 235, 246, 271, 282, 307, 318, 343, 354, 379, 415, 426, 438, 463, 474, 499, 510, 535, 546.  In further support, Plaintiff alleges Mr. Drinkwater testified under oath that the County did not have an intent to acquire any interest in Lots 23, 24, or 25 while he was employed as the Director of Airports for the County.  SAC, ¶¶ 39, 62, 87, 110, 135, 158, 183, 206, 231, 267, 303, 339, 375, 411, 434, 459, 495, 531.  Similarly, Plaintiff alleges that Mr. Nelson testified under oath that Defendant did not have any intent to acquire any interest in Lots 24 and 25.  *Id.*  These allegations sufficiently plead that Defendant did not have an intent to acquire an interest in Lots 23, 24, and 25, but they are conclusory with respect to Defendant's actual knowledge that an office building was in existence in the RPZ and another lot was planned and zoned for an incompatible use at the time the representations were made.

Plaintiff's allegations with respect to the fifth statement are also insufficient to establish scienter. Plaintiff merely alleges that Defendant "knew that these certifications, representations, promises and assurances were false and did not intend to comply with federal law and regulations." SAC, ¶¶ 75, 123, 171, 219, 255, 291, 327, 363, 399, 447, 483, 519, 555. These allegations are vague and conclusory and, accordingly, scienter is not met with respect to the fifth allegedly false statement.

Even if actual knowledge is not met, Plaintiff argues the SAC adequately alleges that Defendant "acted with deliberate indifference." Oppo. at 27. As Defendant correctly points out, "the correct statutory standard is 'deliberate ignorance,'" or reckless disregard. *See* Reply at 6; *see also* 31 U.S.C. § 3729(b)(1)(A)(ii)-(iii). Notwithstanding this error, Plaintiff asserts that Defendant "has to be inferred to have some degree of knowledge about how the grants work and what is required to do to be eligible for the grants." *Id.* at 28. According to Plaintiff, this means it must be inferred that Defendant was familiar with the requirements of eligibility for grant funding, including certifying, promising, or assuring compliance with land use requirements. *Id.* Further, Plaintiff contends Defendant "would have known, in the absence of deliberate indifference to the fact, that the FAA would deem compliance with safety related requirements to be the most important goals of the grant applications and grant agreements." *Id.* Plaintiff's argument, however, fails to address how Defendant deliberately ignored or recklessly disregarded the truth or falsity of the statements; rather, Plaintiff focuses on Defendant's deliberate ignorance or reckless disregard for the requirements to obtain funding. Accordingly, Plaintiff has failed to sufficiently allege that Defendant made a false statement with deliberate ignorance or reckless disregard.

The allegations discussed herein are vague and conclusory, particularly with respect to Defendant's knowledge of the falsity of the statements. Therefore, Plaintiff fails to show Defendant had the requisite scienter for FCA liability.

//

//

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiff does not sufficiently plead causes of action under the FCA.  Accordingly, the Court **GRANTS** Defendant's motion to dismiss, and **DISMISSES** this action in its entirety without prejudice, and with leave to amend. Plaintiff may file a Third Amended Complaint that cures the deficiencies described above on or before **<u>February 1, 2018</u>**.  Pursuant to Civil Local Rule 15.1(c), if Plaintiff wishes to file a Third Amended Complaint, Plaintiff must also include "a version of that pleading that shows—through redlining, underlining, strikeouts, or other similarly effective typographic methods—how that pleading differs from the previously dismissed pleading."  *See* Civ. LR 15.1(c).

**IT IS SO ORDERED**.

Dated:  January 11, 2018

Hon. Michael M. Anello
United States District Judge

15cv2674-MMA (WVG)