# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel* Michael Durkin<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO,<br><br>Defendant. | Case No.: 15cv2674-MMA (WVG)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br><br>[Doc. No. 41] |

Plaintiff Michael Durkin filed this action under the *qui tam* provisions of the False Claims Act ("FCA"), 31 U.S.C. § 3792 *et seq.*, on behalf of the United States of America and against Defendant County of San Diego. *See* Doc. Nos. 1, 17, 31, 40. The United States declined to intervene in this action. *See* Doc. No. 7. Defendant now moves to dismiss the Third Amended Complaint ("TAC") pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that all causes of action are not pled with the specificity required by Rule 8 and Rule 9(b) of the Federal Rules of Civil Procedure. *See* Doc. No. 41-1 ("MTD"). Plaintiff Durkin filed an opposition [Doc. No. 42 ("Oppo.")], and Defendant filed a reply [Doc. No. 43 ("Reply")].[1] The Court found the matter

---

[1] Even though the United States of America declined to intervene in this action, it has previously filed statements of interest in response to the first two motions to dismiss requesting any dismissal be without

suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1. Doc. No. 44. For the reasons set forth below, the Court **GRANTS** Defendant's motion.

## BACKGROUND[2]

By way of background, Plaintiff[3] alleges that in 2014, he was involved in a lawsuit in which the owners of two properties—Lots 24 and 25—located near the Palomar-McClellan Airport ("Airport") sued the County of San Diego for inverse condemnation. Doc. No. 40 ("TAC"), ¶ 7. The TAC states that Plaintiff was the manager of the two entities that owned those properties. *Id.* In the course of that litigation, Plaintiff alleges he uncovered the information underlying this action. *Id.* In the instant case, Plaintiff asserts thirteen claims against Defendant County of San Diego under the FCA, and requests damages and civil penalties. *See generally*, TAC. Plaintiff alleges Defendant made false statements to the Federal Aviation Administration ("FAA") in applying for grants for the maintenance and development of the Airport located in Carlsbad, County of San Diego, California. TAC, ¶ 1.

The FAA provides monetary grants to airport sponsors, or public agencies that own and operate airports, through its Airport Improvement Program ("AIP"), authorized under the Airport and Airway Improvement Act of 1982 ("AAIA"). 49 U.S.C. § 47101 e*t seq.*; TAC, ¶ 9. Congress requires that grant applications contain particular written assurances that an airport sponsor seeking federal funds will abide by a variety of requirements. 49 U.S.C. § 47107(a); TAC, ¶ 9. Under the AAIA, the Secretary of Transportation is responsible for ensuring compliance with these assurances, 49 U.S.C. § 47107(g), and is

---

prejudice as to the United States. Doc. Nos. 21, 34. The United States of America has not made that request in response to the instant motion to dismiss. *See* Docket.
[2] Because this matter is before the Court on a motion to dismiss, the Court must accept as true the allegations set forth in the complaint. *See Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 740 (1976).
[3] For convenience, "Plaintiff" hereinafter refers to *Qui Tam* Plaintiff Durkin.

authorized to approve grant applications only if the airport sponsor's assurances are "satisfactory to the Secretary." 49 U.S.C. § 47107(a).

Plaintiff alleges the FAA makes funding "available to improve American airports" and provides funds to recipients "to ensure the safety of airports, the surrounding areas, and the people in or around the airports." TAC, ¶ 9. The FAA "tether[s] the availability of such federal funds to compliance by the recipient with federally established safety requirements." *Id.* In order to obtain federal funds through the FAA, Plaintiff alleges applicants must affirm and assure the FAA that land located within the Runway Protection Zone[4] ("RPZ") complies, or will comply with, FAA specifications for RPZ land use," and grant recipients must comply with those affirmations and assurances, including a promise to "acquire sufficient interests in RPZ land to prevent new incompatible use and eliminate existing incompatible uses." *Id.* Further, the TAC states that "[u]pon approving a grant, the FAA requires the applicant to make certain statements, assurances, and promises regarding how the airport and surrounding areas will be operated, maintained, improved, or acquired" for safety purposes. TAC, ¶ 11. Then, Plaintiff alleges, "a grantee is required to file applications for payment to the FAA in the form of receipts or vouchers," which "impliedly or expressly recertify all the promises, assurances, and statements previously made in the grant applications and agreements." TAC, ¶ 12.

In particular, Plaintiff alleges Defendant applied, was approved, and obtained funding for use in relation to the Airport. Plaintiff contends that, in 1995, Defendant knew that certain properties were in the RPZ, and obtained federal funds from the FAA in order to acquire those properties. TAC, ¶ 28. Plaintiff alleges that later in 1995, Defendant reprioritized "its projects because it determined the cost of acquisition was more than it was willing to pay" and "reallocated funds granted by the FAA for such

---

[4] The RPZ is defined as "an area off the end of all airport runways." TAC, ¶ 21.

acquisition to other airport improvements." TAC, ¶ 29. The TAC asserts that the County knew that it was required under federal regulations to "acquire interests in the non-airport owned RPZ property sufficient to prevent or eliminate incompatible development." TAC, ¶ 30. Plaintiff alleges that, since its 1995 postponement, Defendant has not "taken any step to acquire any interest at all in said lots, much less an interest sufficient to prevent incompatible uses in the RPZ." TAC, ¶ 31. Plaintiff alleges that Defendant "did nothing to prevent the development of Lot 24 with an office building in 2004 . . . and has done nothing since that time to eliminate this office building from the RPZ . . . ." *Id.* Plaintiff alleges this safety hazard continues to the present time, despite Defendant's assertions in its grant applications. *See id.*

Specifically, Plaintiff alleges Defendant, on multiple occasions between 2005 and 2014, made misrepresentations to the FAA in applying for, entering into agreements for, or making claims for federal funds. *See generally*, TAC. Each cause of action is based on four or five allegedly false statements contained in thirteen different written FAA grant applications or agreements, which essentially state that the County would prevent or eliminate incompatible land uses in the RPZ. *See generally, id.*

## **LEGAL STANDARD**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 12(b)(6). The plausibility standard demands more than "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and alterations omitted). Instead, the complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

Under Rule 9(b), when the complaint includes allegations of fraud, a party must "state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). "In other words, the complaint must set forth what is false or misleading about a statement and why it is false." *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009) (internal quotation marks omitted). The plaintiff's allegations of fraud must be "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal citations and quotation marks omitted). Further, the plaintiff must describe "the who, what, when, where, and how" of the fraudulent misconduct charged. *Id.* In other words, the plaintiff must specify the time, place, and content of the alleged fraudulent or mistaken conduct. *In re Glenfed Inc. Sec. Litig.*, 42 F.3d 1541, 1547-48 (9th Cir. 1994). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Failure to satisfy this heightened pleading requirement can result in dismissal of the claims. *Vess*, 317 F.3d at 1107.

## DISCUSSION

Defendant moves to dismiss Plaintiff's FCA causes of action on the grounds that the materiality and scienter elements are not pled with the specificity required by Rules 8

and 9(b) of the Federal Rules of Civil Procedure.[5]  MTD at 11.  Plaintiff opposes dismissal of any claims.  *See* Oppo.

*1.  Materiality*

The FCA defines material as "having a natural tendency to influence, or be capable of influencing the payment or receipt of money or property."  31 U.S.C. § 3729(b)(4).  The Supreme Court has provided some guidance for determining whether a particular requirement is material:

> A misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment.  Nor is it sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance.  Materiality, in addition, cannot be found where noncompliance is minor or insubstantial.
>
> In sum, when evaluating materiality under the [FCA], the Government's decision to expressly identify a provision as a condition of payment is relevant, but not automatically dispositive.  Likewise, proof of materiality can include, but is not necessarily limited to, evidence that the defendant knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement.  Conversely, if the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material.  Or, if the Government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, and has signaled no change in position, that is strong evidence that the requirements are not material.

---

[5] The Court **GRANTS** Plaintiff's requests for incorporation by reference.  Doc. No. 42-2, Plaintiff's Request to Incorporate by Reference ("PRIBR").  In light of incorporating Plaintiff's exhibits by reference into the TAC and for the purposes of avoiding duplicity, the Court **DENIES** Defendant's requests for incorporation by reference with respect to Exhibits 1 and 2 and **GRANTS** Defendant's requests with respect to Exhibits 3 through 31.  *See* Doc. No. 41-3, Defendant's Request to Incorporate by Reference ("DRIBR").  Also, the Court **DENIES** Defendant's request to judicially notice three ordinances.  *See Korematsu v. United States*, 584 F. Supp. 1406, 1414 (N.D. Cal. 1984) (stating that judicial notice may be taken of both adjudicative facts, Fed. R. Civ. P. 201, and legislative facts, which includes facts supporting legislative history and construction, but not the literal wording of the statutes themselves).

*Universal Health Servs. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2003-04 (2016) (internal citations and footnote omitted). In determining materiality, no one factor is necessarily determinative. *Id.* at 2001.

Defendant identifies three types of factual allegations raised by Plaintiff to support his assertion that the allegedly false certifications at issue are material to the FAA: (1) 14 C.F.R. 151.11[6] requires compliance; (2) the FAA warned that building a roadway extension traversing a Newport News, Virginia airport's RPZ could potentially jeopardize future AIP grants; and (3) Associate Administrator of Airports at the FAA, D. Kirk Shaffer, stated that had he known Defendant's statements were false he would not have approved the grant application and would have taken adverse action. TAC, ¶¶ 10-18; MTD at 12-16. Defendant then contends that 14 C.F.R. 151.11 does not apply to AIP grants, that the Newport News incident occurred after the grants at issue in this case, and that Shaffer's statements actually support a finding that the County's certifications were not the *sine qua non* of the receipt of government funding. MTD at 12-16.

In addition to the allegations above, Plaintiff alleges that Defendant "knew that the FAA considered office buildings to be incompatible with the purpose of the RPZ to enhance" aviation safety, which is the "highest aviation priority in the FAA." TAC, ¶ 47. Additionally, FAA Circulars 150/5300 and 150/5100 require airport sponsors to acquire interests in the property in the RPZ sufficient to prevent and eliminate such incompatible uses. *Id.*

---

[6] Plaintiff contends that the FAA is required by law to base its decisions to approve or disapprove applications for AIP grants on several statements, affirmations, and assurances promising to acquire sufficient interest in RPZ land to prevent or eliminate incompatible uses, and that the airport is compliant with applicable FAA guidelines and United States Law. TAC, ¶¶ 9-11. Specifically, Plaintiff asserts that 14 C.F.R. 151.11 "mandates that before any owner operator of any airport receiving federal funds use the funds to make improvements to runways or landing strips, or to make substantial improvements, the sponsor must 'own, acquire, or agree to acquire adequate property interests in runway clear zones,'" which Plaintiff contends is synonymous with the RPZ. TAC, ¶ 10. Defendant argues that 14 C.F.R. 151.11 applies to a completely different grant program that ceased awarding grants in 1982 and that runway clear zones are different than RPZs. MTD at 13. The Court is unpersuaded by Defendant's argument at this stage in the litigation.

Plaintiff's factual allegations establish with sufficient particularity that the allegedly false certifications were at least plausibly material to the FAA.[7] Plaintiff's contention that the allegedly false certifications are material to the FAA because the FAA is required by law to assure compliance, and because the FAA's priority is ensuring safety, is a factor weighing towards materiality—although it is not automatically dispositive. *See* TAC, ¶ 50; *see also Escobar*, 136 S. Ct. at 2003 ("when evaluating materiality under the False Claims Act, the Government's decision to expressly identify a provision as a condition of payment is relevant, but not automatically dispositive").

In addition, Plaintiff asserts that the FAA had warned an airport in Newport News, Virginia, that constructing a road traversing the RPZ "could potentially jeopardize future [AIP] grants." TAC, ¶14. This indicates that incompatible uses in the RPZ are material to the FAA. On the other hand, use of the words "could potentially jeopardize" indicates that incompatible uses in the RPZ may not always be material. Also, the Court notes that Plaintiff was only able to find one situation where an airport was warned that a particular structure in the RPZ may impact future funding, despite the number of airports and RPZs in the United States. Nonetheless, the Court considers this a factor plausibly weighing towards materiality at this stage in the proceedings. *See Escobar*, 136 S. Ct. at 2003-04 (indicating that evidence that the government routinely denies funding based on noncompliance supports a finding of materiality, but evidence that the government grants funding notwithstanding noncompliance is evidence that the term is not material).

Finally, Plaintiff alleges that Mr. Shaffer "was the decision maker on grant applications made by the County for the Airport, and was the decision maker on whether to disburse funds to the County under approved FAA grants." TAC, ¶ 15. "After reading the allegations of false statements made in this complaint, and the deposition of Drinkwater as described in this complaint, Mr. Shaffer stated that 'The truth of each of

---

[7] The Court discusses Defendant's "knowledge" of materiality in the scienter analysis below.

the assurances [referred to in the Third Amended Complaint] was critical to his determination of whether to approve, fund, or disburse the grant.'" *Id.* More specifically, Mr. Shaffer stated that he "would have rejected applications for funding from airport Sponsors who [he] knew had falsely certified compliance with the FAA requirements to prevent incompatible land uses from being developed, and eliminate existing incompatible land uses located in the RPZ." TAC, ¶ 17. As such, the Court finds that Plaintiff has sufficiently pleaded materiality with the requisite particularity.

### 3. <u>Scienter</u>

In *Escobar*, the Supreme Court held that "[w]hat matters is not the label the Government attaches to a requirement, but whether the defendant knowingly violated a requirement that the defendant knows is material to the Government's payment decision." *Escobar*, 136 S. Ct. at 1996. The Supreme Court noted that the FCA imposes liability on any person who "knowingly" presents a false claim for payment to the government. 31 U.S.C. § 3729(a). Knowingly means that a person has "actual knowledge of the information," "acts in deliberate ignorance of the truth or falsity of the information," or "acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A). The Supreme Court construed the scienter requirement together with the materiality requirement to mean that a claimant must not only know about a violation of a particular statutory or regulatory provision, but that the claimant must also know that compliance with that provision is material to the government's payment decision. *Escobar*, 136 S. Ct. at 2001-02 ("A defendant can have 'actual knowledge' that a condition is material without the Government expressly calling it a condition of payment . . . . Likewise, [where] a reasonable person would realize the imperative of a [particular condition], a defendant's failure to appreciate the materiality of that condition would amount to 'deliberate ignorance' or 'reckless disregard' of the 'truth or falsity of the information' even if the Government did not spell this out." (quoting 31 U.S.C. § 3729(b)(1)(A)). This requirement is both rigorous and strictly enforced. *Escobar*, 136 S. Ct. at 2002.

To show actual knowledge, Plaintiff must allege that Defendant knew its statements were false when made, meaning Defendant knew the statements were "lie[s]." *Wang v. FMC Corp.*, 975 F.2d 1412, 1421 (9th Cir. 1992), *overruled on other grounds*, *United States ex rel. Hartpence v. Kinetic Concepts, Inc.*, 792 F.3d 1121 (9th Cir. 2015); *see also United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1171-72 (9th Cir. 2006). "[U]nder the FCA, 'collective knowledge' provides an inappropriate basis for proof of scienter because it effectively imposes liability . . . for a type of loose constructive knowledge that is inconsistent with the Act's language, structure, and purpose." *United States v. Sci. Applications Int'l Corp.*, 626 F.3d 1257, 1274 (D.C. Cir. 2010). Thus, a complaint asserting claims based on false statements must plead scienter of the speaker. *United States v. Scan Health Plan*, No. CV 09-5013-JFW (JEMx), 2017 WL 4564722, at * 5 (C.D. Cal. Oct. 5, 2017); *United States ex rel. Modglin v. DJO Global Inc.*, 114 F. Supp. 3d 993, 1024 (C.D. Cal. 2015) (dismissing allegations "that defendants 'knew that they were falsely and/or fraudulently claiming reimbursements' and 'knew [their devices] were being unlawfully sold for unapproved off-label cervical use'" because "[n]one of the facts relator plead[ed] . . . support[ed] their conclusory allegation that defendants knowingly submitted false claims," and therefore, notwithstanding "that Rule 9(b) does not require particularized allegations of knowledge," the complaint "f[e]ll short of plausibly pleading scienter under Rule 8, *Twombly*, and *Iqbal*"), *aff'd*, 678 Fed. Appx. 594 (9th Cir. 2017).

As Defendant notes, Peter Drinkwater, the County's Director of Airports since 2003, is the representative who made all of the allegedly false certifications. *See* DRIBR, Exhibits 3-26; PIBR, Exhibits 1-2; TAC, ¶ 52. As a result, Plaintiff must prove Mr. Drinkwater had the requisite scienter.[8] *Sci. Applications Int'l Corp.*, 626 F.3d at 1274

---

[8] The Court is unpersuaded that the fact that the County assured and certified the understandings and assurances contained in the grant applications and grant agreements, and authorized Mr. Drinkwater to "act in connection with the application," permit the application of collective knowledge to the allegedly false certifications. *See* Oppo. at 27-28.

(stating that the plaintiff must plead the speaker's scienter under the FCA). In analyzing Mr. Drinkwater's scienter, the Court omits Plaintiff's factual allegations which are unrelated to Mr. Drinkwater.[9]

Plaintiff alleges Defendant was "acutely aware" of the FAA's requirement to acquire real property interests in the RPZ sufficient to prevent or eliminate incompatible uses and that it had not done so. TAC, ¶ 26. In support of this allegation, Plaintiff alleges that a 1995 written application for an AIP grant to the FAA declared that Lots 23, 24, and 25 are in the "West RPZ" and that Defendant "budgeted for acquisition" of these lots. TAC, ¶ 28. Later in 1995, Defendant allegedly postponed its plan to acquire Lots 23, 24, and 25 "because it determined the cost of acquisition was more than it was willing to pay." TAC, ¶ 29. In 1997, Plaintiff alleges Defendant again "expressly acknowledged that Lots 24 and 25 in the RPZ should be acquired." TAC, ¶ 30. However, Mr. Drinkwater did not become the County's Director of Airports until 2003 and Plaintiff does not explain whether Mr. Drinkwater was even aware of these applications. TAC, ¶¶ 30-31, 52.

In addition, Plaintiff alleges that Defendant assigned "one or more of its employees, including Peter Drinkwater . . . , the duty and responsibility to monitor, observe, determine, and report the land uses and improvements, both existing and proposed, . . . in the RPZ." TAC, ¶ 32. As such, Plaintiff appears to allege that Mr. Drinkwater knew of the existence of the office building on Lot 24 at least since 2005, and of the office building on Lot 25 at least since the owner's application to develop the lot was filed in 2008. *See id.* Plaintiff also alleges that the City of Carlsbad notified Defendant that a developer intended to build an office building on Lot 24 in the RPZ and that the developer applied for a permit to build such an office building. TAC, ¶ 34.

---

[9] For example, Plaintiff alleges that Eric Nelson attended City Council meetings to explain how office buildings in the RPZ are inappropriate. *See* TAC, ¶¶ 32-34, 39, 78. Plaintiff does not explain whether Mr. Drinkwater was ever aware of Mr. Nelson's statements. *See id.*

11

Pursuant to an agreement between the County and the City of Carlsbad, the owner of Lot 24 was required to grant the County an avigation easement over Lot 24. TAC, ¶ 35. A grant deed conveying the easement was executed on March 23, 2004. *Id.* As such, Plaintiff alleges the County knew of the office building on Lot 24. *Id.* Further, Plaintiff alleges that the County sent an assessor to Lot 24 in 2005 to make an official written record of the building—including the number of habitable square feet of space and the quality and characteristics of construction. TAC, ¶ 36. Since then, the County has assessed property taxes to the owner of Lot 24 on the basis that it was improved with an office building. *Id.* Even further, Plaintiff alleges that Defendant did in fact know its certifications were false because it provided an updated Airport Layout Plan to the FAA in 2010 which contained a bird's-eye photograph of the airport from before the office building was built, which "hid" the existence of the office building in the RPZ. TAC, ¶ 57; Oppo. at 21-23.

The Court is unpersuaded that these allegations sufficiently plead scienter. Plaintiff fails to allege how this information was conveyed to Mr. Drinkwater such that he had actual knowledge of the truth or falsity of the information, that he deliberately ignored the truth or falsity of the information, or recklessly disregarded the truth or falsity of the information. *See* 31 U.S.C. § 3729(b)(1)(A)(i)-(iii). Plaintiff's TAC is similarly devoid of any factual allegations plausibly showing that Mr. Drinkwater knew the allegedly false certifications were material to the FAA. Instead, Plaintiff's allegations refer to the knowledge of the County generally and Mr. Nelson. *See* TAC, ¶¶ 33, 39, 57, 58. Accordingly, the Court finds that Plaintiff's allegations discussed herein are insufficient to establish the requisite scienter for FCA liability.

## CONCLUSION

For the foregoing reasons, Plaintiff does not sufficiently plead causes of action under the FCA. Accordingly, the Court **GRANTS** Defendant's motion to dismiss. Given Plaintiff's prior opportunities to amend and the allegations contained in the TAC, the Court concludes amendment would be futile and **DISMISSES** the action in its

entirety with prejudice as to *Qui Tam* Plaintiff Michael Durkin and without prejudice as to Plaintiff the United States of America. The Clerk of Court is instructed to enter judgment accordingly and to close this case.

**IT IS SO ORDERED**.

Dated: July 10, 2018

Hon. Michael M. Anello
United States District Judge